ANTHONY J. TAMBOLLEO & another[1] vs. TOWN OF WEST
BOYLSTON & another.[2]

No. 91-P-523.

Worcester. December 17, 1992. - May 25, 1993.

Present: PERRETTA, PORADA, & IRELAND, JJ.

*Municipal Corporations*, Police, Liability for tort. *Police*, Municipality's
liability. *Civil Rights*, Availability of remedy. *Practice, Civil*, Summary
judgment, Presentment of claim under Massachusetts Tort Claims Act.
*Massachusetts Tort Claims Act.*

Plaintiffs asserting claims against a municipality under 42 U.S.C. § 1983
(1988) for alleged negligence in the training and supervision of two po-
lice officers who had assaulted the plaintiffs, failed to demonstrate, in
summary judgment proceedings, the existence of any genuine issue for
trial as to whether the police officers were inadequately trained [528-
530] or as to whether the municipality had either a policy of inade-
quately training its police officers [531] or a custom of condoning the
police officers' violation of citizens' constitutional rights [531-532].
In a civil action against a municipality, claims for emotional distress and
for negligence in the training and supervision of the municipality's po-
lice officers were not sufficiently expressed or implied in the plaintiffs'
presentment letters under § 4 of G. L. c. 258, the Massachusetts Tort
Claims Act, that apprised the municipality only of an intentional tort
(assault by the officers), a claim barred by G. L. c. 258, § 10(*c*). [532-
533]

CIVIL ACTION commenced in the Superior Court Depart-
ment on May 28, 1987.

A motion for summary judgment was heard by *William C.
O'Neil, Jr.,* J.

*Michael J. Traft* for the plaintiffs.

*Herbert F. Travers, III (Ellen M. O'Connor* with him) for
the defendants.

---

[1]Catherine Parretti.

[2]The police department of West Boylston.

PERRETTA, J. In letters presented to the defendant town's board of selectmen pursuant to G. L. c. 258, § 4, the plaintiffs stated that they had sustained personal injuries as the result of an assault by John Sargent, a West Boylston police officer. They thereafter brought a complaint against the town and its police department seeking damages for violations of 42 U.S.C. § 1983 (1988), emotional distress, and negligence in the training and supervision of its police officers. Summary judgment was entered for the defendants for the stated reasons that the plaintiffs' allegations under § 1983, even if established, were an insufficient basis upon which to conclude that the defendants had been deliberately indifferent to the rights of persons with whom the police come into contact, that the defendants were not liable for the intentional torts of their employees, and that the remaining claims had not been expressly or impliedly asserted in the presentment letters. We affirm the judgment.

1. *The facts.* We set out the facts as they appear in the various pleadings, discovery materials, affidavits, and exhibits that were available to the judge in ruling on the motion for summary judgment. On the late evening of June 2, 1984, Tambolleo was standing outside Parretti's house located on Tyson Road in Worcester. He was conversing with Parretti and her daughter when Sargent pulled up in front of the house.

Because Sargent had not sounded the cruiser's siren or flashed its blue lights, neither Tambolleo nor Parretti realized that Sargent was a police officer until he began to yell at Tambolleo. As best Tambolleo and Parretti understood Sargent, it seems that a car with high beams had passed by him in West Boylston. Sargent turned his car around and pursued the driver along the various streets of West Boylston, into Worcester, and onto Tyson Road.

Tambolleo insisted that there was a mistake as he had not been in West Boylston that night. When Tambolleo turned away from Sargent to go into Parretti's house, Sargent grabbed Tambolleo by his shoulder and began beating him with his fists and flashlight. Parretti tried to intervene, but

Sargent grabbed her and told her, in substance, to "shut up or she would be going for a ride." Freeing themselves from Sargent, Tambolleo and Parretti ran into the house and called the Worcester police.

Sargent and two other officers arrested Tambolleo the next day on warrants charging him with failing to dim his headlights, failing to produce his license and registration, being a disorderly person, and assault and battery on a police officer.[3] Tambolleo and Parretti alleged that for a long time after this incident, they and their family members were frequently followed by various members of the West Boylston police department and sometimes cited for minor traffic violations.

2. *The civil rights claim.* "To make out a case for municipal liability under 42 U.S.C. § 1983, the Supreme Court has repeatedly held that liability can be found only 'where the municipality *itself* causes the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under § 1983.' *City of Canton, Ohio* v. *Harris,* 489 U.S. 378, 385 . . . (1989). Thus, a plaintiff must show that a policy or custom of the city led to the constitutional deprivation alleged. *Monell* v. *New York City Dept. of Social Services,* 436 U.S. 658 . . . (1978). This requires that plaintiff demonstrate both the existence of a policy or custom and a causal link between that policy and the constitutional harm. See, e.g., *City of Canton,* [489 U.S. at 385]. *Oklahoma City* v. *Tuttle,* 471 U.S. 808, 823 . . . (1985)." *Santiago* v. *Fenton,* 891 F.2d 373, 381 (1st Cir. 1989). The plaintiffs allege in their complaint that the defendants "were grossly negligent in their policy, custom and practice of inadequately training, hiring, supervising, and assigning [their] police officers."

In moving for summary judgment, the defendants relied upon statements made by the plaintiffs in the materials described in Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974). More specifically, when asked through various forms of discovery

---

[3]The plaintiffs' complaint also contained counts against Sargent and the two other officers. Those claims proceeded to trial, and a jury returned verdicts against Sargent and one of the other officers, Robert Barton. This appeal does not involve any of the claims against the individual officers.

to state the basis for their claim that Sargent had been inadequately trained and supervised, the plaintiffs answered only that they had been assaulted by Sargent, that there had been "talk in town" that Sargent had never attended a police academy, and that an officer who had participated in Sargent's training, Robert Barton, was himself the subject of a civilian complaint and in large measure responsible for the "pattern or practice of misconduct which existed within the Police Department."

Responding to the defendants' motion, the plaintiffs submitted the following additional materials. There was a letter that a civilian had written to the selectmen, about six months prior to the assault in issue, complaining about Sargent's "belligerent behavior" and combative attitude in stopping the civilian for speeding. The civilian was of the opinion that Sargent was deliberately trying to provoke an argument which would lead to an arrest. He urged Sargent's removal from the force.

Two handwritten "file" notes made by Sargent's superior officers about ten days after the assault were also presented by the plaintiffs. It is apparent from these notes that the superior officers knew of the assault upon Tambolleo. The notes reflect that each of the superior officers spoke to Sargent on June 13, 1984, about "his demeanor with [the] public which seems to be precipitating complaints against him." They advised Sargent to give "deep" thought to his actions and ponder why he had more civilian complaints than other officers "whose productivity was just as high as his."

Deposition transcripts show that when the plaintiffs asked Sargent, "What exactly were you trained with respect to using physical force in making an arrest?" he answered that he had been told by Barton that he was allowed to use that force reasonably necessary to make an arrest. Barton testified at his deposition that a police officer, in making an arrest, may use whatever force is reasonable and necessary "to effectuate the arrest" and that the degree of force deemed necessary in any given situation is a decision which must be

made by each officer based upon specific circumstances and the officer's training and experience.

Barton's testimony and instruction to Sargent on the use of force in making an arrest is consistent with the statement set out in an eight-page document identified as the defendants' arrest policy and procedures: "Force shall only be used when there is resistance or reasonable certainty of resistance. The amount of force shall be restricted to that which is reasonable, necessary, and proper for the safe custody of the prisoner, or for overcoming any resistance that may be offered."

We agree with the Superior Court judge's conclusion that the plaintiffs had no reasonable expectation of proving municipal liability for the inadequate training of Sargent. See *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991). There is nothing in the record that speaks to the adequacy of any training afforded to Sargent by the defendants. The "talk in town" that Sargent had not attended a police academy does not rise to the level of a showing of a violation of G. L. c. 41, § 96B, that is, that the defendants failed to require Sargent to attend a police training school. Further, it does not follow from the fact that Barton instructed Sargent about the use of force in making an arrest that Sargent received no other training.

Moreover, Barton's instructions to Sargent were consistent with the statements set out in the document offered by the plaintiffs as evidence of the defendants' arrest policy and procedures. No argument is made that Barton's instructions were erroneous. Additionally, the plaintiffs' version of the assault, which must be accepted as true for purposes of summary judgment, shows that Sargent did not follow Barton's instructions or the defendants' arrest policy and procedures. The fact of the assault itself, although distressing, does not add probative force to the plaintiffs' claim that Sargent was inadequately trained. "[A]dequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable." *City of Canton*, 489 U.S. at 391.

Even had it been shown that Sargent's training was inadequate, the defendants would nonetheless be entitled to summary judgment on the § 1983 claim. "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983 . . . . Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality — a 'policy' as defined by our prior cases — can a city be liable for such a failure under § 1983." *Id.* at 389.

Although the plaintiffs spoke in terms of a "pattern of misconduct within the police department," the evidence adduced by them does not allow for an inference that the defendants encouraged, condoned, or acquiesced in violations of citizens' constitutional rights. See, e.g., *id.* at 390 n.10 ("It could also be that the police, in exercising their discretion, so often violate constitutional rights that the need for further training must have been plainly obvious to the city policymakers, who, nevertheless, are 'deliberately indifferent' to the need"). See also *Voutour* v. *Vitale*, 761 F.2d 812, 820 (1st Cir. 1985).

Notwithstanding some evidence showing that civilians had complained about Sargent, there is nothing in the record revealing the nature of those complaints. Further, even if we assume that the defendants, upon learning of the assault upon Tambolleo and Parretti, should have done more than advise Sargent to give "deep" thought to the complaints about him, "we cannot hold that the failure of a police department to discipline in a specific instance is an adequate basis for municipal liability." *Santiago* v. *Fenton*, 891 F.2d at 382.

The allegation that Barton also had been complained against by a civilian gives the plaintiffs no assistance in meeting their burden under rule 56.[4] As the plaintiffs failed

---

[4] The plaintiffs produced nothing to show the nature of the complaint against Barton. Although the plaintiffs attribute this omission to the fact that the defendants obtained a protective order against discovery of some

to show the existence of a genuine issue for trial on the § 1983 claim, the defendants were entitled to summary judgment.

3. *The presentment letters.* As earlier noted, the plaintiffs' presentment letters, required by G. L. c. 258, § 4, advised the selectmen that Sargent, while on duty but in Worcester, assaulted them and caused bodily injury. The question raised by the letters is whether they can be fairly read as disclosing claims against the defendants for negligent supervision and emotional distress.

Notice of a claim under c. 258 is required to " 'ensure[] that the responsible public official receives notice of the claim so that that official can investigate to determine whether or not a claim is valid, preclude payment of inflated or nonmeritorious claims, settle valid claims expeditiously, and take steps to ensure that similar claims will not be brought in the future.' *Lodge* v. *District Attorney for the Suffolk Dist.*, 21 Mass. App. Ct. 277, 283 (1985). See also *Vasys* v. *Metropolitan Dist. Commn.*, 387 Mass. 51, 57 (1982). . . . The presentment requirement envisions arbitration, compromise, or settlement of claims. See G. L. c. 258, § 5; *Holahan* v. *Medford*, 394 Mass. 186, 189 (1985)." *Pickett* v. *Commonwealth*, 33 Mass. App. Ct. 645, 647 (1992).

None of these purposes is served by the letters in the instant case which apprise only of a claim arising out of an intentional tort by Sargent. See *Wightman* v. *Methuen*, 26 Mass. App. Ct. 279, 281-282 (1988). There, because the presentment under § 4 spoke only of a negligent failure to supervise an elementary school playground, the plaintiffs were not allowed to maintain an action based upon a failure to seek medical assistance. The plaintiffs' attempt to distinguish *Wightman* on the basis that the two claims there involved were dependent on different circumstances which would necessitate different investigations, whereas in the present case liability is based upon circumstances ascertainable through one investigation.

---

of their records, their supplemental answers to interrogatories show that the civilian's identity was known to them.

This argument, however, overlooks the fact that the sole claim made in the plaintiffs' letters was one barred by G. L. c. 258, § 10(*c*). The presentments, therefore, would not serve to prompt the selectmen to investigate Sargent's assault for any purpose contemplated under G. L. c. 258, §§ 4 and 5. See *Holahan* v. *Medford*, 394 Mass. at 189. Although the statute does not specify what information must be included in a presentment for it to be deemed sufficient, the instant letters do no more than make a claim on the basis of an identified act for which immunity has been expressly provided. They cannot fairly be read as stating claims for negligent supervision and emotional distress. We see no error in the Superior Court judge's conclusion that the plaintiffs' actions could not be maintained on those theories. See and compare *Wightman* v. *Methuen*, 26 Mass. App. Ct. at 281-282, with *Carifio* v. *Watertown*, 27 Mass. App. Ct. 571, 572-573 (1989).

*Judgment affirmed.*