Toomey, J.
INTRODUCTION
The plaintiff, Sheila Fredette, as next friend of her son David Fredette, brought this suit after David was allegedly raped by a roommate while staying at the Respite House of Fitchburg (“Respite House”). The matter is before the court on the defendant Commonwealth of Massachusetts’ motion for summary judgment. For reasons stated infra, the motion is allowed in part and denied in part.
BACKGROUND
David Fredette was a twenty-one year old mentally retarded man who was allegedly raped by Frank Eldridge during the late evening and early morning hours of September 25-26, 1987. David and Eldridge were roommates at the Respite House, where both men were staying temporarily. Eldridge had a knife and pornographic magazines in the room with him during the attack. Eldridge eventually pleaded guilty to indecent assault and battery upon David and was sentenced to serve one year in the Massachusetts House of Corrections.
The Respite House was operated by the Worcester Area Association for Retarded Citizens, Inc., which had a contract with the Commonwealth’s Department of Mental Retardation (“DMR”) to provide residential respite services to mentally retarded people. According to its regulations, the Respite House could only accept guests who were not at risk to harm themselves or others. David had stayed at the Respite House many times over a number of years.
Roger Kane, an employee of the Herbert Lipton Community Mental Health Center (“the Lipton Center”), a private nonprofit agency, was Eldridge’s social worker and had provided therapy to him. Michael Mudd was an employee of the DMR assigned to the Lipton Center, and was Kane’s supervisor. Mudd was primarily responsible for referring Eldridge to the Respite House on September 24, 1987.
During the weeks prior to his admission at the Respite House, Eldridge was angry and suicidal. On September 14 and September 17, applications were filed, pursuant to G.L.c. 123, §12, seeking the temporary hospitalization of Eldridge. On September 14, 1987, physicians at Burbank Hospital noted that he *665 had suicidal ideation with a plan, was carrying a large knife, was suffering from increasing depression and impaired judgment, and was unpredictable with a history of angry outbursts. On September 15, Eldridge attempted to commit suicide by using a sharp knife. Kane’s notes from September 17 indicate that Eldridge was restless and angry, that he appeared at risk for being explosive, and that he appeared volatile. Kane’s notes from September 18 recite that a number of agencies in which Eldridge was involved, including the Department of Social Services and the Department of Mental Health, had previously met to discuss his case and had recommended long-term inpatient psychiatric treatment. Kane’s September 24 notes indicate that Eldridge was upset, explosive, and depressed, and that he threatened to commit suicide. They conclude that Eldridge “is losing control and very agitated.”
Karen Reynolds, the director of Respite House, testified at a deposition that, prior to accepting the referral, she was not aware of the DSS and DMR recommendation or of Eldridge’s recent deterioration. Had she been informed of those facts, she would probably not have accepted Eldridge to Respite House.
David told his mother, Sheila Fredette, about the rape at his first opportunity when she picked him up on September 27, 1987. Sheila, her husband, and David returned to the Respite House and confronted the staff. An internal investigation by the DMR followed, resulting in an initial determination that David had fabricated the rape. The Fredettes felt that this conclusion reflected an attempt by the DMR to cover up the incident. Sheila testified at a deposition that, “David knew what was in that report. He knew that they said it did not occur. And that made him very angry. That made him very upset that they didn’t believe him.” Sheila testified that David had said many times, “They don’t believe me.”
The Fredettes’ former attorney had repeated correspondence with the Commissioner of the Department of Mental Retardation regarding the rape and the investigation that followed. The Fredette’s current attorney sent formal presentment letters, pursuant to G.L.c. 258, §4, to the Attorney General and the Secretary of the Executive Office of Human Services. The presentment letters were dated September 26, 1989. They gave a detailed version of the facts, repeated herein, and stated in part, ‘The Respite admitted Frank Eldridge at the recommendation of Dr. Roger Kane of the Development Services Unit of the Lipton Mental Health Center... [Eldridge told the police that] Roger Kane assisted him in the placement at the Respite.”
David has a cognitive level, at best, of that of an elementary school child. David’s psychologist has indicated that this disability does not allow David to realize that negligence or wrongdoing by the Department of Mental Retardation may have caused him to suffer harm.
In their Second Amended Complaint, the Fredettes allege that the Commonwealth inflicted emotional distress on David through its improper, post-incident investigation; that the investigation was negligent; that the Commonwealth negligently failed to ensure that Respite House, pre-incident, followed appropriate admissions procedures and supervision of guests; and that the Commonwealth, as Michael Mudd’s employer, is liable for Mudd’s allegedly reckless or negligent referral of Eldridge to Respite House. The Commonwealth has responded with this motion for summary judgment.
DISCUSSION
Summary judgment shall be granted where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the moving party is entitled to judgment as a matter of law. Pederson v. Time. Inc., 404 Mass. 14, 16-17 (1989). Where the party moving for summary judgment does not have the burden of proof at trial, this burden may be met by either submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communication Corp., 410 Mass. 805, 809 (1991). Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a material fact in order to defeat the motion. Pederson, supra at 17.
1. Negligent Investigation
The Fredettes allege that “Public employees of the defendant Commonwealth of Massachusetts . . . negligently or recklessly failed to provide a proper or accurate investigation of the above described incident, as was its duty ...”
An investigator’s duly runs to the person or entity on whose behalf the investigation is conducted, not to the person being investigated. O’Connell v. Bank of Boston, 37 Mass.App.Ct. 416, 419 (1994). Thus, a slipshod or incomplete investigation, without more, is a disservice to the one who commissioned the investigation, not to its subject. Id. In this instance, the DMR, not the Fredettes, commissioned the investigation of the rape. The Fredettes therefore do not have standing to bring a claim for negligent investigation, and summary judgment must be granted to the Commonwealth on this Count.
2. Infliction of Emotional Distress
The Fredettes, complaint also alleges that employees of the Commonwealth intentionally[3] or negligently made false accusations as to the conduct and veracity of David, which accusations they knew or should have known would cause and, in fact, did cause David to suffer severe emotional distress and physical harm. *666 The complaint asserts that those accusations constituted extreme and outrageous conduct, utterly intolerable in a civilized world, and were, therefore, actionable.
The Commonwealth correctly responds that the Fredettes cannot sustain a claim for negligent infliction of emotional distress because they have not offered proof that David suffered physical harm, demonstrative of emotional distress, as a result of the false accusations. Payton v. Abbott Labs, 386 Mass. 540, 556 (1982). The Commonwealth is entitled to summary judgment upon plaintiffs’ negligent infliction theory of liability.
The Fredettes have, however, offered enough evidence to go forward on a claim of intentional infliction of emotional distress. One who, without privilege to do so and through extreme and outrageous conduct, intentionally causes severe emotional distress to another is subject to liability for intentional infliction of emotional distress. Agis v. Howard Johnson Co., 371 Mass. 140, 142 (1976). To prevail, the Fredettes must demonstrate that employees of the Commonwealth either intended that David suffer emotional distress or knew or should have known that emotional distress was the likely result of their conduct; that the conduct was extreme and outrageous, beyond all possible bounds of decency, and was utterly intolerable in a civilized community; that the employees’ actions were the cause of David’s distress; and that David’s emotional distress was severe and of a nature that no reasonable person could be expected to endure it. Id. at 144-45. On the facts asserted at bar, a jury could find that Commonwealth employees should have known that a retarded man would suffer severe emotional distress as a result of being told people in his support system thought he lied about being raped; that the assertion that David lied, under the circumstances, was extreme and outrageous conduct; and that David suffered severe emotional distress as a result. Therefore, summary judgment is denied, insofar as plaintiffs seek recovery for intentional infliction of emotional distress.
3. Liability of Commonwealth for Actions of Respite House
The Fredettes assert that the Commonwealth, through its public employees, is liable for the Respite House staffs failure to ensure appropriate standards and procedures for the admission, monitoring, and supervision of its guests. G.L.c. 258, §2 allows suits against the Commonwealth as a public employer for the negligent or wrongful acts or omissions of its employees. However, the Commonwealth is not a public employer of its private contractors, G.L.c. 258, §1, and, consequently, is not liable for the acts or omissions of such contractors. Since the Respite House was such a private contractor, its staff members are not public employees for whose torts the Commonwealth may be answerable. Therefore, summary judgment must be granted to the Commonwealth on this claim.
4. Liability of Commonwealth for Acts and Omissions of Mudd
Finally, the Fredettes allege in their complaint that Mudd, a public employee, recklessly or negligently referred and persuaded Respite House to admit Eldridge and recklessly or negligently failed to inform the Respite House staff of Eldridge’s dangerous propensities.
The Commonwealth offers two arguments that summary judgment should be granted in its favor on the claims which advance those allegations. First, the Commonwealth maintains that the Fredettes failed to comply with the presentment requirements of the Massachusetts Torts Claims Act, G.L.c. 258 (“the M.T.C.A.”). Second, the Commonwealth contends that it is immune from liability because Mudd’s alleged acts or omissions come under the discretionary function exception to liability under the M.T.C.A. Neither argument possesses merit.
A. The Presentment Issues
G.L.c. 258, §4 requires that a claim under the M.T.C.A. be presented to an appropriate executive officer of the Commonwealth within two years of the date the cause of action arose. The Commonwealth now asserts both that the presentment letters given to it by the Fredettes did not include allegations of wrongful acts by Mudd and that the letters were not timely. The Commonwealth argues that, for either reason, the Court should dismiss the claims.
The M.T.C.A. does not mandate the contents of a presentment letter or otherwise specify the inclusions necessary for it to be legally effective. The purpose of presentment is “to ensure that the responsible public official receives notice of the claim so that the official can investigate to determine whether or not a claim is valid, preclude payment of inflated or nonmeritorious claims, settle valid claims expeditiously, and take steps to ensure that similar claims will not be brought in the future.” Tambolleo v. Town ofWestBoylston, 34 Mass.App.Ct. 526, 532 (1993). Presentment requirements should not become a fetish. Carifio v. Water-town, 27 Mass.App.Ct. 571, 574-75, 576 (1989) (where the date of an allegedly tortious incident was inadvertently left off a presentment letter, the presentment is still valid because the Commonwealth could discover this date by means of a simple telephone call or letter inquiry).
In the instant case, the presentment letter mistakenly stated that Kane was responsible for the allegedly tortious referral of Eldridge to Respite House. In fact, Mudd made the referral. The misstatement may be significant because, although Mudd is an employee of the Commonwealth, Kane is not. The Commonwealth is not liable for torts committed by Kane, and, accordingly, the presentment letter did not, in a literal sense, *667 provide the Commonwealth notice that it was potentially liable for the negligent referral.
Such a view, however, reads the presentment requirements too narrowly. The Commonwealth, in the course of even minimal investigation, would surely have discovered its potential liability. If the Commonwealth had taken the simple step of inquiring as to whether or not Kane was one of its employees, it would have learned that his supervisor, Mudd, was a Commonwealth employee, and that the Commonwealth was, through that employment relationship, potentially liable for the referral. Further, if the Commonwealth had investigated, even in the most cursory manner, the events leading up to the assault, it would have undoubtedly learned from Respite House employees that its employee, Mudd, made the referral. Finally, if the Commonwealth had investigated the allegations, in the same presentment letter, of torts connected with the DMR’s internal investigation of the rape, it would have discovered that Mudd made the referral.
The circumstances at bar are analogous to the inadvertent and harmless omission in Carifio. As in Carijio, the instant presentment letter stated facts sufficient to put the Commonwealth on reasonable notice as to its potential liability for the referral. The presentment sub judice met the purpose stated in Tambolleo of noticing public officials with respect to possible claims against the Commonwealth and provides no reason to relieve the Commonwealth of the consequences of its inattention. The Commonwealth is, consequently, not entitled to summary judgment on grounds that the contents of the presentment were not sufficiently focused.
The Commonwealth also asserts that the claims for negligent referral are barred because the presentment letters were not timely. The M.T.C.A. requires that the claims be presented “within two years after the date upon which the cause of action arose.” G.L.c. 258, §2. However, the analytical approach to be employed in fixing the time of accrual of actions under G.L.c. 258 is the same as that employed with respect to the ascertainment of the commencement of the running of a statute of limitations under G.L.c. 260. Dinsky v. Framingham, 386 Mass. 801, 803 (1982). The approved analysis includes the “discovery” rule, under which a cause of action for an inherently unknowable wrong does not accrue until the injured person knows, or in the exercise of reasonable diligence should know, of the facts giving rise to the cause of action. Id. A statute of limitations under G.L.c. 260, and, a priori, the M.T.C.A., is tolled by “any mental condition which precludes the plaintiffs understanding the nature or effects of his acts and thus prevents him from comprehending his legal rights.”[4] McGuinness v. Cotter, 412 Mass. 617, 625 & f.n. 9 (1992).
The rape occurred during the early morning hours of September 25-26, 1987. In the circumstances of David’s disability and his inability to understand, even now, that the actions by the Commonwealth caused him to suffer harm, the law tolling the presentment requirement compels the conclusion that the trigger date for the two-year presentment window commenced, at the earliest, on September 27, 1987 when David first revealed the assault to one able to comprehend and give voice to his interests. Cf. G.L.c. 260, §7.
The Fredettes sent to the Commonwealth three identical presentment letters, each dated September 26, 1989. The Commonwealth submitted evidence in the form of affidavits from its records-keepers that it did not receive the letters until September 28, September 29, and October 2, 1989, respectively. The Fredettes have produced return postal receipts showing delivery dates of September 27. They have also referred to the Commonwealth’s exhibit copy of one of the presentment letters it received, which has a stamp on it reading “CORRESPONDENCE OFFICE 89 SEP 28 AM 2:46.” The Fredettes correctly point out that a jury could infer that the Commonwealth actually received the letter on September 27, 1989, prior to the close of the post office, but that its mailroom did not open the letter until the early morning hours of September 28. The Fredettes have produced enough evidence, in the discovery record, to send the issue of the date the Commonwealth received the presentment letters to a jury. There being a genuine issue of material fact as to the date of receipt, the Commonwealth’s motion for summary judgment, based on its assertion of an untimely presentment, must be rejected.
B. The Discretionary Function Issue
Finally, the Commonwealth argues that it is immune from liability for Mudd’s allegedly negligent referral because Mudd’s action was a discretionary function under G.L.c. 258, §10(b). That statute protects the government from liability for “any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a .. . public employee, acting within the scope of his office or employment, whether or not the discretion involved is abused.” Id.
In deciding whether there is governmental immunity under this section, the court is to employ a two-step analysis. The first step is to determine whether the government employee had any discretion at all as to what course of conduct to follow. Harry Stoller & Co. v. Lowell, 412 Mass. 139, 141 (1992). If discretion was permitted the employee, the second step involves a determination as to whether the discretion was of a sort for which § 10(b) provides immunity. Id.
The Supreme Judicial Court, in Whitney v. Worcester, 373 Mass. 208 (1977), addressed the second Harry Stoller question.[5] Whitney observed that immunity applies to “those functions which rest on the exercise of judgment and discretion and represent planning and policymaking,” and does not apply to “those func *668 tions which involve the implementation and execution of such governmental policy or planning.” Id. at 217. Thus, the government is immune from negligence suits based upon the planning of sewers, but may be liable for negligence in their construction and maintenance. Id. In examining whether liability attaches to particular governmental acts or omissions, the following questions may be asked:
Was the injury-producing conduct an integral part of governmental policy-making or planning? Might the imposition of tort liability jeopardize the quality and efficiency of the governmental process? Could a judge or jury review the conduct in question without usurping the power and responsibility of the legislative or executive branches? Is there an alternate action for damages? . . . Other relevant considerations are the reasonable expectations of the injured person with respect to his relationship to the governmental entity in question, the nature of the duty running from the government to the governed in the particular case, and the nature of the injury.
Id. at 219-20. Application of the Whitney analytic method to the alleged conduct of the government employee at bar suggests the conclusion that his conduct was implementative, and not creative, in nature.
The Supreme Judicial Court has held that where a government employee, whose duties include placing Department of Mental Health clients in short-term housing, fails to warn a private rooming-house operator that a client he referred has a history of destruction of property, violence, and fire setting, the Commonwealth is liable when the client subsequently sets fire to the rooming house. Onofrio v. Department of Mental Health, 408 Mass. 605 (1990). The Court stated, “It is clear . .. that the conduct [the trial judge] found to have been negligent was not the exercise of choice regarding public policy and planning but, instead, was the negligent carrying out of previously established policies or plans.” Id. at 611. Similarly, the Commonwealth is not immune from liability where a parole officer fails adequately to warn a trailer park manager that a parolee, whom the trailer park has hired as a maintenance man, has dangerous propensities and the parolee subsequently rapes a trailer park resident. Bonnie W. v. Commonwealth, 419 Mass. 122 (1994). Both Onofrio and Bonnie W. are precedent for the proposition that, in the case at bar, the Commonwealth may find in §10b no safe harbor from liability.
The Commonwealth disputes the conclusion that immunity is not available to it, noting that DMR regulations require that its clients receive the “opportunity to live and receive services in the least restrictive and most normal setting possible.” 104 Code Mass.Regs. 20.04(4). The Commonwealth argues that the determination of the appropriate level of services for an individual client is made by trained professional staff through the exercise of clinical judgment, that the staff s exercise of its discretion gives shape to the regulatory policy, and that the Commonwealth is, therefore, immune from liability for negligent exercise, by the staff, of discretion. The rationale stated in Onofrio and Bonnie W., however, eviscerates the Commonwealth’s argument. While the Commonwealth is immune from liability for creating the policy stated in the regulations, it is not immune from liability for employees who negligently carry out this policy by making inappropriate referrals. The reach of §10b is not as comprehensive as the Commonwealth suggests.
Because the Fredettes have produced evidence showing that they made proper presentment, and because the Commonwealth is not immune from liability for Mudd’s allegedly negligent referral, there remain genuine issues of material fact to be resolved at trial.
ORDER[6]
For the foregoing reasons, it is ORDERED that the Commonwealth’s motion for summary judgment be ALLOWED as to the claims for negligent infliction of emotional distress, negligent investigation, and the alleged negligence of Respite House. It is further ORDERED that the Commonwealth’s motion for summary judgment be DENIED as to the claim for intentional infliction of emotional distress and the claims arising out of the alleged negligence of its employee Michael Mudd.

Although the complaint is drafted in terms of recklessness, the plaintiff defines that concept by employing the traditional elements of intentional conduct. The court will treat plaintiffs allegations as one accusing defendant’s employees of an intentional tort.

This statement interprets G.L.c. 260, §7, which states that if a plaintiff “. . .is incapacitated by reason of mental illness when a right to bring an action first accrues, the action may be commenced within the time hereinbefore limited [by statutes of limitation] after the disability is removed.”

Although the Whitney opinion was written prior to the passage of G.L.c. 258, later opinions relied on its analysis. See e.g., Horta v. Sullivan, 418 Mass. 615, 620 (1994); Harry Stoller & Co. v. Lowell, supra at 142. Thus, Whitney may be viewed as precedent for the purposes of the instant assessment of G.L.c. 258.

Because plaintiffs’ complaint has not been crafted in the traditional “count” fashion, this Order will define the relief it grants in terms of the theories of alleged liability gleaned from the complaint.

Karen Reynolds, Diane Martin, Roger Kane, Frank Eldridge, and the Commonwealth of Massachusetts.