Garsh, J.
The plaintiff in this action, Michael P. Hannan, Sr. (“Hannan”), seeks recovery for negligent infliction of emotional distress from the defendant, Town of Yarmouth (the ‘Town”), arising from the death of Hannan’s minor son, Michael P. Hannan, Jr. (“Michael”).[3] The Town now moves for summary judgment, asserting that Hannan’s individual claim is barred because he failed to present his claim to the Town pursuant to G.L.c. 258, §4. Alternatively, the Town argues that Hannan may not recover because there was an insufficient temporal nexus between the accident and Hannan’s discovery of the accident, and Hannan did not view his son’s injuries, and because he did not sustain injuries as a result of the defendant’s negligence.
For the reasons set forth below, the defendant’s motion for summary judgment is ALLOWED.
BACKGROUND
The undisputed facts are as follows. On or about August 12, 1992, at 12:30 p.m., seven-year old Michael was riding his bicycle in Yarmouth, when he was struck by a police cruiser operated by Lieutenant Robert J. Shallow. As a result of the accident, Michael sustained severe head injuries and was transported to Boston City Hospital where he died approximately twelve hours later.
At the time of the accident, Michael resided with his mother in Yarmouth; Hannan resided in Fall River, some eighty miles away. Michael last lived with Hannan when Michael was one and a half years old. Hannan was entitled to visitation with Michael on alternating weekends.
On the day of the accident, Hannan arrived at his home at approximately 10:45 p.m. to find a note from his mother stating he should call her because there was an emergency. When he telephoned, Hannan’s mother informed him of the accident and that Michael was in a hospital in Boston, but she did not know which one. After determining that Michael was at Boston City Hospital, Hannan drove to the hospital, arriving at approximately 11:45 p.m. Hannan did not enter Michael’s room, but stood in the doorway. Within minutes of Hannan’s arrival, Michael died. Hannan never entered Michael’s room; he left the hospital immediately upon learning of Michael’s death. He did not see Michael, either alive or deceased.
On August 19, 1992, Hannan, through his attorney, sent a letter under the Massachusetts Tort Claims Act to the Board of Selectmen of the Town of West Yarmouth. The subject line of the letter stated “Michael P. Hannon [sic], Jr. (deceased) ppa Michael P. Hannon [sic], Sr. vs. Town of Yarmouth and Robert Shallow” (emphasis added). The body of the letter stated that Hannan, as “father and next friend of Michael,” had retained the author regarding the fatal injury to Michael. The letter further set forth the basis of the claim: that Michael’s death was caused by the negligence of Lt. Shallow and the Town of West Yarmouth. The letter does not explicitly make any claim on behalf of Hannan, in his individual capacity, nor does it set forth the facts which form the basis of Hannan’s individual claim.
DISCUSSION
The Massachusetts Torts Claims Act requires a plaintiff to satisfy certain notice requirements as a condition precedent to filing a tort action against a public employer. General Laws c. 258, §4 requires a claimant to “present” his claim in writing to the executive officer of the public employer that is the potential defendant.
Presentment must be made in “strict compliance with the statute.” Weaver v. Commonwealth, 387 Mass. 43, 47 (1982). “Underlying that strict, and often harsh, interpretation of the presentment requirement is a recognition of the need for public bodies to make prompt investigations in the interest of disproving fraudulent claims and settling meritorious ones out of court, and the desirability of enabling them to take preventive steps to avoid future claims.” Krasnow v. Allen, 29 Mass.App.Ct. 562, 567 (1990). “Presentment ensures that the responsible public official receives notice of the claim so that that official can investigate to determine whether or not a claim is valid, preclude payment of inflated or nonmeritorious claims, settle valid claims expeditiously, and take steps to ensure that similar claims will not be brought in the future.” Gilmore v. Commonwealth, 417 Mass. 718, 721-22 (1994), quoting Lodge v. District Attorney, 21 Mass.App.Ct. 277, 283 (1985).
Although G.L.c. 258, §4 does not specify what information must be included for a sufficient presentment, the letter must contain enough information so that it fairly can be read as disclosing claims subject to suit within the Torts Claims Act. Tambolleo v. Town of West Boylston, 34 Mass.App.Ct. 526, 532-33 (1993) (claims for negligent infliction of emotional distress and negligent supervision barred where plaintiffs’ presentment letter merely advised town that they had sustained bodily injury resulting from an assault by a police officer, assault being an intentional tort barred by the Torts Claims Act). A presentment letter will not be deemed sufficient if the town has not been afforded an opportunity to investigate the claim. Wightman v. Town of Methuen, 26 Mass.App.Ct. 279, 281-82 (1988) (claim of negligent failure to secure immediate medical attention brought by elementary school student injured in brawl on school grounds barred because presentment letter only notified town that he had *271 sustained injuries because of the negligent supervision of school officials who failed to prevent the altercation) .
A comparison of Hannan’s presentment letter with that analyzed in Gilmore v. Commonwealth, 417 Mass. 718 (1994), highlights its deficiencies and compels the conclusion that Hannan’s claim is barred. The plaintiff in Gilmore asserted a claim for negligent infliction of emotional distress suffered as a result of his sister’s murder. Id. at 719. The plaintiffs sister, Patricia, had filed numerous complaints that one Prendergast had threatened and assaulted her. While on furlough from a house of correction, Prendergast entered the home where the plaintiff and his sister resided, assaulted the plaintiff and members of his family, then kidnapped Patricia and subsequently murdered her. Id. Patricia’s estate filed suit alleging that the defendants negligently released Prendergast on furlough. Id. at 720. The plaintiffs presentment letter stated that he was Patricia’s brother and that he “hereby submits” a claim; his claim was based on the facts set forth in the complaint filed by Patricia’s estate, a copy of which was attached to the letter. Id. at 720-21. The Supreme Judicial Court held that the plaintiffs letter was adequate because it was “not so obscure that educated public officials should find themselves baffled or misled with respect to his assertion of a claim for negligent infliction of emotional distress.” Id. at 723.
Gilmore is distinguishable on several bases. First, it was unequivocal that the plaintiff in Gilmore was presenting a claim on his own behalf — a claim wholly separate from the wrongful death claim that had been asserted previously. In the present case, however, there was nothing in Hannan’s letter that would place the Town on notice that he was asserting an individual claim. The subject line of the letter referenced only Hannan’s capacity as Michael’s representative.[4] Furthermore, the body of the letter states that its author has been retained regarding fatal injuries to Michael caused by Lt. Shallow’s negligence. Nowhere does the letter state or even hint that the author represented Hannan individually or that Hannan himself had suffered any physical harm.
Moreover, in Gilmore, the presentment letter, when read together with the allegations of the attached complaint, set forth predicate facts giving rise to the plaintiffs individual claim. The complaint alleged that Patricia lived at home with her siblings, that Prenderg-ast entered that home and violently assaulted Patricia and her family members, that Prendergast’s threats and conduct created a reasonable belief in the minds of Patricia and her family that Prendergast, if allowed to be free, constituted a danger to Patricia’s life, and that the defendants negligently failed to restrain Pre-ndergast. In contrast, Hannan’s letter set forth none of the sort of facts that would lead a reasonable public official to investigate a claim of negligent infliction of emotional distress arising from Michael’s death.
While Massachusetts has recognized that one may recover from emotional distress resulting from injury to a third person,
. . . the determination whether there should be liability for the injury sustained depends on a number of factors, such as where, when, and how the injury, to the third person entered into the consciousness of the claimant, and what degree there was of familial or other relationship between the claimant and the third person.
Dziokonski v. Babineau, 375 Mass. 555, 568 (1978). A parent may recover for emotional distress from harm to a minor child where the parent witnesses the accident or comes on the scene soon after while the child is still there. Id. A parent who witnesses a child’s injuries at the hospital immediately following the accident, rather than at the scene, also may recover for negligent infliction of emotional distress. Ferriter v. Daniel O’Connell’s Sons, Inc., 381 Mass. 507, 518 (1980). “So long as the shock follows closely on the heels of the accident, the two types of injury are equally foreseeable.” Id.
While the precise boundaries may not be defined with certitude, there are limits to the cause of action for negligent infliction of emotional distress based upon an injury to a third person. Not every parent whose child has been fatally injured by the negligence of another may maintain a cause of action for negligent infliction of emotional distress. Thus the Court has held that a plaintiff may not recover where she failed to establish that she sustained any emotional distress from the allegedly negligent act, as distinguished from the grief caused by the death of her child. Miles v. Edward O. Tabor, M.D., Inc., 387 Mass. 783, 789 (1982). Likewise, the Court declined to permit recovery where a plaintiff, more than a thousand miles from the scene of the accident, learned of her son’s death by telephone seven hours after the accident occurred and never witnessed the scene of the accident or her son’s injuries. Cohen v. McDonnell Douglas Corp., 389 Mass. 317, 341-42 (1983). Similarly, a plaintiff failed to state a cause of action where she learned of her son’s death four hours after he died and saw his body the next day at the funeral home. Stockdale v. Bird & Sons Inc., 399 Mass. 249, 251-52 (1987); cf. Nancy P. v. D’Amato, 401 Mass. 516, 520 (1988) (no recovery where mother learned of harm to her child many months after sexual abuse occurred).
The inadequacy of the presentment letter in this case is readily apparent in view of these principles. The letter does not allege any facts that would place a reasonable public official on notice that Hannan was asserting a claim for negligent infliction of emotional distress. The letter does not state whether Hannan witnessed the accident or saw Michael’s injuries at the hospital. The letter does not state when he learned about the accident or when he went to the hospital. The letter does not state when, where, how or from *272 whom he learned about his son’s death. The letter does not state those facts which comprise the objective evidence of Hannan’s harm. In sum, the letter states nothing that would put the Town on notice that Hannan suffered anything more than the grief one would anticipate any father would experience upon the tragic loss of a son.
In contrast to Gilmore, this is a case where public officials were likely to be “baffled and misled” as to Hannan’s claim for negligent infliction of emotional distress. The net result of the plaintiffs argument would be that every time public officials receive a wrongful death claim on behalf of a minor, they must investigate to determine whether the parents and other family members might have valid individual claims for negligent infliction of emotional distress. Such an investigation — focusing, as it does, on post-accident matters — would not be within the scope of a routine accident investigation. Surely G.L.c. 258, §4 was intended to avoid such an inefficient, blunderbuss approach so that resources could be dedicated to the thorough investigation and settlement of claims specifically presented. The Legislature has allocated the burden to potential plaintiffs to make known to public officials the existence of claims so that public officials may investigate them. The Town of Yarmouth was denied that opportunity here.[5]
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendant’s motion for summary judgment is ALLOWED.

This court (Tierney, J.) granted summary judgment on Hannan’s claims against the Town’s employee. Hannan, as Co-Administrator of Michael’s estate, has settled all of the estate’s claims against the Town. The only remaining claim, therefore, is Hannan’s individual claim of negligent infliction of emotional distress (Count IV).

The subject line referenced Michael ppa Hannan. The term “ppa” derives from the phrase “per procuration,” which means “by proxy.” Black’s Law Dictionary 1141 (6th ed. 1990). “These words give notice to all persons that the agent is acting under a special and limited authority.” Id.

Because the presentment letter is defective, it is not necessary to reach the Town’s alternative arguments that the undisputed facts demonstrate Hannan’s claim may not be maintained because Hannan learned of the accident some ten hours after it occurred, never witnessed Michael’s injuries firsthand, and suffered nothing more than the expected anguish of a grieving parent. These issues do, however, illustrate the necessity of presenting public officials with sufficient information to enable them to evaluate a claim.