SHAWN P. MCGUINNESS & another[1] *vs.* PAUL F. COTTER & another.[2]

Norfolk. January 8, 1992. - May 11, 1992.

Present: LIACOS, C.J., ABRAMS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Medical Malpractice*, Statute of limitations. *Limitations, Statute of. Repose, Statute of. Minor*, Statute of limitations.

The provision appearing in G. L. c. 231, § 60D, prior to its amendment by St. 1986, c. 351, § 23, that a medical malpractice action brought by a minor "shall be commenced within three years from the date the cause of action accrues, except that a minor under the full age of six years shall have until his ninth birthday in which the action may be commenced," was a statute of limitations and not a statute of repose; thus the period set forth in the statute was subject to the discovery rule of *Franklin* v. *Albert*, 381 Mass. 611, 619 (1980), and the mental incapacity tolling provisions of G. L. c. 260, § 7. [620-623]

It was error for a judge to allow a motion for summary judgment against a minor plaintiff on the ground that his medical malpractice claims were time-barred, where the materials before the judge presented a factual issue as to whether the plaintiff was suffering from mental disability at the time his cause of action accrued, so as to be entitled to the protection of the tolling provisions of G. L. c. 260, § 7. [623-627]

On a mother's medical malpractice claims arising from the obstetrical care rendered to her by the defendants, the materials before the judge were insufficient, as a matter of law, to permit the conclusion that a reasonably prudent person in the plaintiff's position had knowledge or sufficient notice, more than three years before the action was commenced, that the defendants' treatment was a possible cause of her son's disabilities. [627-630]

CIVIL ACTION commenced in the Superior Court Department on July 29, 1988.

[1] Diane McGuinness.

[2] Quincy Obstetricians and Gynecologists, Inc.

The case was heard by *Roger J. Donahue*, J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Elizabeth N. Mulvey* for the plaintiffs.

*Charles P. Reidy, III* (*Teresa J. Farris* with him) for the defendants.

LIACOS, C.J. The plaintiffs, Diane McGuinness and her minor son Shawn, commenced this action on July 29, 1988, seeking to recover damages allegedly stemming from obstetrical care rendered to Diane McGuinness in 1976 by the defendants, Dr. Paul F. Cotter and Quincy Obstetricians and Gynecologists, Inc.[3] The plaintiffs' principal contention is that the defendants were negligent in failing to recognize signs of fetal distress during Diane's labor and that, as a result, Shawn was born with cerebral palsy. A judge in the Superior Court granted the defendants' motion for summary judgment on the ground that Shawn and Diane's claims were time barred.[4] The plaintiffs appealed to the Appeals Court. We transferred the case on our own motion. We now reverse.

---

[3]In their complaint, Shawn and Diane each asserted claims of negligence, breach of express and implied warranties, and failure to obtain informed consent against Dr. Cotter and Quincy Obstetricians and Gynecologists respectively. Shawn sought damages for personal injuries; Diane sought damages for the cost of Shawn's medical care, emotional distress, and loss of consortium. Diane's claims for loss of consortium were subsequently dismissed, and no appeal has been taken from the dismissal.

[4]The plaintiffs' complaint does not identify the exact conduct on the part of the defendants that forms the basis of the plaintiffs' action. In their offer of proof, they asserted that the defendants failed to perform fundal measurements or an ultrasound test in order to determine Diane's expected delivery date and that the defendants failed to conduct fetal monitoring during Diane's labor. The plaintiffs further alleged that, had fetal heart monitoring been performed during labor, the defendants would have recognized signs of fetal distress and accordingly would have performed a caesarian section. According to the plaintiffs, the failure to perform a caesarian section caused Shawn to suffer loss of oxygen which led to irreparable brain damage. A medical malpractice tribunal reviewed the plaintiffs' allegations pursuant to G. L. c. 231, § 60B (1990 ed.), and concluded that the evidence presented by the plaintiffs, if substantiated, was not sufficient to raise a legitimate question of liability appropriate for judicial inquiry. Accordingly, the plaintiffs were required to post a bond to proceed with their

We summarize the facts in the light most favorable to the plaintiffs. *Riley* v. *Presnell*, 409 Mass. 239, 240-241 (1991). On December 14, 1976, Shawn McGuinness was born at St. Margaret's Hospital in Boston, where he was delivered vaginally by the defendant Dr. Cotter. Shawn's birth weight and Apgar scores were both relatively low, and he experienced meconium aspiration at birth.[5] Shawn was transferred to the neonatal intensive care nursery at Saint Margaret's for a twenty-four hour period. Three days later Shawn was discharged from the hospital, as being "fine and healthy."

In the year following his birth, Shawn began to show signs of developmental delay. In February, 1978, Dr. Michael Bresnan performed a neurological evaluation of Shawn. On February 23, 1978, in a report addressed to another physician, Dr. Bresnan wrote that "Shawn shows clear evidence of a moderate spastic quadriparesis which appears to represent the results of a pre- and paranatal encephalopathy. This would be best classified as cerebral palsy." According to Diane McGuinness, Dr. Bresnan did not tell her that Shawn's disabilities were potentially attributable to the obstetrical care Diane received during her pregnancy. Rather, the physician stated only that disabilities such as Shawn's "sometimes happen." Following the 1978 diagnosis of cerebral palsy, Shawn was treated by a number of physicians and physical therapists. He suffers neurological and developmental problems and is confined to a wheelchair. In addition, Shawn cannot read or write.

This action was commenced in 1988 when Shawn was twelve years of age. According to Diane's affidavit, she commenced this action after viewing a television advertisement

---

action. The present appeal concerns only the timeliness of the plaintiffs' complaint. Thus, we do not reach the merits of the plaintiffs' underlying claims.

[5]An Apgar score is an "evaluation of a newborn infant's physical status by assigning numerical values (0 to 2) to each of 5 criteria: 1) heart rate, 2) respiratory effort, 3) muscle tone, 4) response stimulation, and 5) skin color; a score of 10 indicates the best possible condition." Stedman's Medical Dictionary at 1395 (25th ed. 1990). Meconium is "the first intestinal discharges of the newborn infant." *Id.* at 930.

which suggested a possible connection between obstetrical care and cerebral palsy. She stated that it was at this time that she first began to suspect that Shawn's disabilities may have been due to the medical care she received during her pregnancy and delivery. The issue before us is whether the plaintiffs' complaint was timely. We address Shawn's claims and Diane's claims separately; in considering each claim, we apply well established principles regarding the propriety of a grant of summary judgment.

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as matter of law. Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). When presented with a motion for summary judgment, the judge must consider the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, to determine whether summary judgment is appropriate. *Id.* The judge should consider the evidence "with an indulgence in the [opposing party's] favor." *Conley* v. *Massachusetts Bay Transp. Auth.,* 405 Mass. 168, 173 (1989), quoting *Anthony's Pier Four, Inc.* v. *Crandall Dry Dock Eng'rs, Inc.,* 396 Mass. 818, 822 (1986). Where summary judgment is sought on the basis of a statute of limitations, once the defendant establishes that the time period between the plaintiff's injury and the plaintiff's complaint exceeds the limitations period set forth in the applicable statute, the plaintiff bears the burden of alleging facts which would take his or her claim outside the statute. *Riley* v. *Presnell, supra* at 243-244. See *Franklin* v. *Albert,* 381 Mass. 611, 619 (1980).

1. *Shawn's claims.* Because Shawn is a minor, the timeliness of his claims is governed by G. L. c. 231, § 60D. Prior to its amendment by St. 1986, c. 351, § 23, § 60D provided that a medical malpractice action brought by a minor "shall be commenced within three years from the date the cause of action accrues, except that a minor under the full age of six

years shall have until his ninth birthday in which the action may be commenced."[6]

In granting the defendants' motion for summary judgment, the trial judge apparently accepted the defendants' argument that, since § 60D provides that "a minor under the full age of six years shall have until his ninth birthday" to commence an action, § 60D is a statute of repose which imposes an absolute bar to Shawn's claims because they were brought after his ninth birthday.[7] The plaintiffs contend, that § 60D as phrased before its amendment (see note 6, *supra*) is a statute of limitations rather than a statute of repose, and that the limitations period set forth in the statute is therefore subject to the discovery rule announced by this court in *Franklin* v. *Albert*, *supra*, as well as to the mental incapacity tolling provision in G. L. c. 260, § 7 (1990 ed.). We agree.

This court previously has noted the distinction between a statute of repose and a statute of limitations. See *Nissan Motor Corp.* v. *Commissioner of Revenue*, 407 Mass. 153, 157-158 (1990); *Klein* v. *Catalano*, 386 Mass. 701, 702 (1982). A statute of limitations is a procedural measure which "normally governs the time within which legal proceedings must be commenced *after the cause of action accrues*" (emphasis added). *Klein*, *supra* at 702. Accordingly,

---

[6]In 1986, the Legislature amended G. L. c. 231, § 60D, by adding a further limitation applicable to actions commenced by minors. The amendment provides that "in no event shall any [malpractice action by a minor] be commenced more than seven years after occurrence of the act or omission which is the alleged cause of the injury upon which such action is based." See St. 1986, c. 351, § 23. This amendment applies to acts or omissions which occur on or after November 1, 1986, and thus is not applicable in this case. See St. 1986, c. 351, § 41.

[7]The record is unclear as to the basis of the trial judge's ruling. The defendants raised two arguments in support of their motion for summary judgment on Shawn's claims: (1) that § 60D is a statute of repose which barred Shawn's claims regardless of when his cause of action accrued; and (2) even if the period set forth in § 60D is viewed as a period of limitations, and thus runs from the time a cause of action accrues, Shawn's cause of action is time barred because it accrued when he was diagnosed with cerebral palsy in 1978. The trial judge allowed the defendants' motion "for the reasons stated in the defendants' brief." We address both arguments in this opinion.

the limitations period in a statute of limitations generally does not begin to run until the date of the plaintiff's injury or the date that the injury is, or reasonably should have been, discovered. *Id.* at 708. A statute of repose, on the other hand, "completely eliminates a cause of action" after the time period established has run without regard to the concept of accrual or of discovery. *Id.* at 702. The period in a statute of repose generally begins to run from some "definitely established event," such as the date on which the act or omission which forms the basis of the cause of action occurs. *Nissan Motor Corp., supra* at 158. The effect of a statute of repose is to place an absolute time limit on the liability of those within its protection and to abolish a plaintiff's cause of action thereafter, even if the plaintiff's injury does not occur, or is not discovered, until after the statute's time limit has expired. See *Klein, supra* at 702.

In the present case, we are confident that the Legislature did not intend to create a repose provision in § 60D when it provided that a minor under six years of age shall have until his or her ninth birthday to commence a medical malpractice action. In order to read § 60D as containing a statute of repose, we would have to construe the ninth birthday limitation as applying to a minor who is under six *when the medical services giving rise to the minor's complaint are rendered.* The statute itself, however, does not refer to any such "definitely established event." See *Nissan Motor Corp., supra.* By contrast, in other instances where the Legislature has sought to create a statute of repose, it has done so expressly, as, for example, in the amended version of the statute at issue here. See G. L. c. 231, § 60D, as amended by St. 1986, c. 351, § 23 ("in no event shall any [medical malpractice action brought by a minor] be commenced more than seven years after occurrence of the act or omission which is the alleged cause of the injury upon which such action is based"). See also G. L. c. 260, § 2B ("in no event shall [an action of tort based on certain improvements to real property] be commenced more than six years after the earlier of the dates of: [1] the opening of the improvement to use; or [2] substantial

completion of the improvement and the taking of possession for occupancy by the owner").

The defendants' construction of § 60D would single out the youngest plaintiffs for the harshest treatment under the statute, because only a minor with a claim stemming from medical treatment received prior to his or her sixth birthday would be absolutely barred from bringing an action after attaining the age of nine. By contrast, a plaintiff with a claim stemming from medical services received after his or her sixth birthday would be subject only to the three-year statute of limitations set forth in G. L. c. 231, § 60D. As a consequence, this latter category of plaintiffs would receive the protection of the "discovery rule," whereas younger plaintiffs would not. We decline to conclude that the Legislature intended such an irrational result, especially where there is no language in the statute to suggest that it did. See *Apkin* v. *Treasurer & Receiver Gen.*, 401 Mass. 427, 436 (1988); *Pobieglo* v. *Monsanto Co.*, 402 Mass. 112, 122 (1988) (Liacos, J., dissenting). Indeed, we think it clear from the face of the statute that the purpose of the ninth birthday provision was to afford younger plaintiffs additional time within which to bring their claims.

Thus, we conclude that the ninth birthday limitation in § 60D applies only where a minor's cause of action accrued prior to his or her sixth birthday. If the alleged malpractice occurs before the minor's sixth birthday, but the cause of action does not accrue until after the minor's sixth birthday, the minor's claim is subject to the three-year limitation set forth in § 60D. We reject the defendants' argument that Shawn's claims are barred solely because he commenced this action after his ninth birthday.

Our conclusion that the preamendment version of § 60D does not contain a statute of repose does not end our inquiry. In support of their motion for summary judgment below, the defendants raised the additional argument that Shawn's cause of action accrued no later than February 23, 1978 (the date he was diagnosed with cerebral palsy), and that, accordingly, even if we treat (as we do) § 60D as a statute of limi-

tations, summary judgment was appropriate because the limitations period expired prior to the date Shawn commenced this action. We disagree.

If we assume, without deciding, that the defendants are correct in their contention that Shawn's cause of action accrued on February 23, 1978, our review of the record reveals that a factual issue remains in dispute as to whether Shawn was suffering from mental disabilities at that time such that he was entitled to the protections of the tolling provisions of G. L. c. 260, § 7.[8] Pursuant to G. L. c. 260, § 7, a statute of limitations is tolled where a plaintiff is "incapacitated by reason of mental illness" at the time his or her cause of action accrues. See *Boudreau* v. *Landry*, 404 Mass. 528 (1989). See also *Pederson* v. *Time, Inc.*, 404 Mass. 14 (1989).[9] A plaintiff enjoys the protections of this statute even if the plaintiff's guardian is available to file suit on the plaintiff's behalf. See *O'Brien* v. *Massachusetts Bay Transp. Auth.*, 405 Mass. 439, 443-435 (1989).

Diane McGuinness' answers to the defendants' interrogatories raise the issue whether, in addition to suffering from cerebral palsy, Shawn was incapacitated by reason of mental illness at the time his cause of action accrued. In her answers, Diane stated that "[Shawn] suffers from a number of

---

[8]Although G. L. c. 260, § 7, also provides for the tolling of a statute of limitations in the case of minority, the more specific provisions of G. L. c. 231, § 60D, override this aspect of § 7 in the medical malpractice context. See *Boudreau* v. *Landry*, 404 Mass. 528, 530-531 (1989). See also *Hernandez* v. *Boston*, 394 Mass. 45, 46-47 (1985).

[9]In *Pederson*, we construed a prior version of G. L. c. 260, § 7, which provided for the tolling of a statute of limitations if the plaintiff was "insane" at the time his or her cause of action accrued. We held that the word "insane" as employed in § 7, meant " 'any mental condition which precludes the plaintiff's understanding the nature or effects of his acts' and thus prevents him from comprehending his legal rights." *Pederson, supra* at 16, quoting *Hornig* v. *Hornig*, 6 Mass. App. Ct. 109, 111 (1978). The present version of G. L. c. 260, § 7, does not employ the word "insane" but rather has been amended to provide that a statute of limitations will be tolled if the plaintiff is "incapacitated by reason of mental illness." The amendment confirms the *Pederson* court's conclusion that the Legislature intended § 7 to be construed broadly.

physical and intellectual disabilities related to his cerebral palsy. Shawn cannot walk or talk properly nor can he read or write. Shawn cannot do the things a normal 12 year old boy does . . . ." The plaintiffs appropriately relied on this evidence in their opposition to the defendants' motion for summary judgment, see *Orfirer* v. *Biswanger*, 25 Mass. App. Ct. 928 (1987) (in opposing motion for summary judgment, party may rely on interrogatory answers of any party in the case). Thus, in our view, they met their burden of responding to the defendants' motion by alleging facts which, if proved at trial, would bring Shawn's claims outside the impact of the statute of limitations. See *Riley* v. *Presnell*, 409 Mass. 239, 243-244 (1991).

Despite the existence of this factual dispute as to whether Shawn was mentally incapacitated at the time his cause of action accrued, the defendants argue for the first time on appeal that, because Shawn was not even two years old when his cause of action allegedly accrued, the fact that he also may have been mentally incapacitated at that time is irrelevant. According to the defendants, Shawn's minority and mental incapacity were "basically synonymous" because both disabilities prevented him from recognizing his legal rights. Therefore, the defendants contend, the provisions of G. L. c. 231, § 60D, which govern claims brought by minors and which take precedence over the minority tolling provision in G. L. c. 260, § 7, see *Boudreau* v. *Landry*, *supra* at 530-532, should take precedence over the mental incapacity provision of § 7 as well.

The answer to the defendants' argument is that, in *Boudreau* v. *Landry*, *supra* at 530-531, we expressly held that § 60D affects only minors, not minors who are also mentally incapacitated. Where both disabilities exist at the time a cause of action accrues, § 7 continues to have force. See *id.* Furthermore, the premise of the defendants' argument — that, at the time Shawn's cause of action accrued, his mental incapacity and minority were essentially the same because both conditions prevented him from recognizing his legal rights — overlooks our observation in *O'Brien*, *supra*, that, in

enacting § 7, "the Legislature had in mind, not merely the inability to sue, but also the difficulties of the incompetent in giving information and in testifying." *Id.* at 444, quoting *Wolf* v. *United States*, 10 F. Supp. 899, 900 (S.D.N.Y. 1935). When these purposes of § 7 are considered, there are sound reasons why, in enacting § 60D, the Legislature would have chosen to limit only actions by minors, and not actions by minors who are mentally incapacitated. Unlike a minor who is mentally incapacitated, a plaintiff whose only disability is his or her minority can be expected to overcome that disability in a fixed amount of time. The provision in § 60D affording minors under the age of six until their ninth birthday to commence an action reflects the Legislature's determination that, by the time a child reaches the age of nine, he or she will be able to testify and give information. By contrast, the Legislature's decision not to impose the same limitation on minors who are also mentally incapacitated reflects the fact that the disability of mental incapacity is not of such a nature that it necessarily will be overcome upon a plaintiff's reaching a certain age. Accordingly, the claims of mentally incapacitated minors are subject to § 7, which tolls a statute of limitations in cases involving mentally incapacitated plaintiffs "until such disability is removed."

Finally, the defendants also have argued that Shawn's disabilities "do not fall within the ambit" of G. L. c. 260, § 7, because his disabilities are permanent. According to the defendants, G. L. c. 260, § 7, only applies in instances where a plaintiff's disability is capable of being removed eventually. To hold otherwise, the defendants assert, would subject a defendant to suit indefinitely. In *O'Brien, supra* at 445, we concluded that such arguments are best addressed to the Legislature, as there is nothing in the language of § 7 to suggest that the Legislature intended to avoid such a result. We adhere to that conclusion today.

Thus, because we conclude that a factual issue remains in dispute whether Shawn was incapacitated by reason of mental illness at the time his cause of action accrued, the

allowance of the defendants' motion for summary judgment on Shawn's claims, if based on these grounds, was error.

2. *Diane's claims.* The timeliness of Diane McGuinness' claims of negligence and breach of warranty is governed by G. L. c. 260, § 4. The version of G. L. c. 260, § 4, applicable to the present action provides that "[a]ctions of contract or tort for malpractice, error or mistake against physicians . . . [or] hospitals. . . shall be commenced only within three years after the cause of action accrues . . . ."[10] Thus, because Diane commenced her action on July 29, 1988, the action will be time barred under G. L. c. 260, § 4, if her cause of action accrued any time prior to July 29, 1985.

The parties do not dispute that the discovery rule applies to Diane's claims. Accordingly, the date on which Diane's cause of action accrued depends on when she: (1) knew or had sufficient notice that she was harmed; and (2) knew or had sufficient notice of the cause of the harm. See *Bowen* v. *Eli Lilly & Co.*, 408 Mass. 204, 208 (1990). See also *Franklin* v. *Albert*, 381 Mass. 611, 619 (1980). There is no dispute that Diane learned of Shawn's cerebral palsy at least as early as February 23, 1978. The question before us is whether the summary judgment record permits the conclusion that, as matter of law, Diane knew, or had sufficient knowledge, of the cause of Shawn's disabilities prior to July 29, 1985. We are mindful that, for purposes of the discovery rule, it is not necessary that Diane have had notice that the defendants were actually responsible for Shawn's disabilities, as that is an issue of liability to be resolved at trial. See *Bowen, supra* at 207-208. Rather, in order for her cause of action to have accrued, Diane need only have had knowledge or sufficient

---

[10]In 1986, the Legislature amended G. L. c. 260, § 4, to contain the further limitation that "in no event shall any [medical malpractice] action be commenced more than seven years after the occurrence of the act or omission which is the alleged cause of the injury upon which such action is based except where the action is based upon the leaving of a foreign object in the body." See St. 1986, c. 351, §§ 29 & 30. This amendment is applicable to claims arising from medical services rendered on or after November 1, 1986, and thus does not apply to this action. See St. 1986 c. 351, § 41.

notice that the obstetrical care she received from the defendants may have caused Shawn's disabilities. See *id.*

The affidavit filed by Diane McGuinness in conjunction with her opposition to the defendants' motion for summary judgment was sufficient to create a factual dispute as to whether Diane had sufficient knowledge prior to July 29, 1985, that there was a possible connection between Shawn's disabilities and the medical care Diane received from the defendants. In her affidavit, Diane indicated that, prior to the spring of 1987, she was "unaware that a failure to perform a caesarian section might have anything to do with Shawn's problems." She further attested that she first began to suspect such a connection in the spring of 1987 when she viewed a television advertisement suggesting a possible connection between obstetrical treatment and cerebral palsy and when she began to compare the birth of her third son, who was delivered by caesarian section, to Shawn's delivery. Finally, Diane also indicated that, prior to consulting with her lawyer in June, 1987, she had never been told by any physician, nor had she learned from any other source, what had caused Shawn's disabilities. This evidence was sufficient to withstand summary judgment on the issue of Diane's actual knowledge, as a judge may not consider the credibility of a witness or the weight of the evidence in ruling on a motion for summary judgment. *Riley* v. *Presnell, supra* at 244.

Further, we do not believe that the summary judgment record in this case permits the conclusion that, as matter of law, Diane reasonably should have known the cause of Shawn's injuries prior to July 29, 1985, such that her cause of action accrued prior to that date. In determining whether a party has sufficient notice of causation, our inquiry is whether, based on the information available to the plaintiff, a reasonably prudent person in the plaintiff's position should have discovered the cause of his or her injuries. See *Bowen* v. *Eli Lilly & Co., supra* at 208.

In this case, the defendants have argued that, at the time Shawn was diagnosed with cerebral palsy, the cause of his disabilities was not "inherently unknowable" and thus, upon

reasonable inquiry, a reasonably prudent person in Diane's position would have discovered the cause of those injuries. Diane McGuinness' affidavit, however, indicates that the physician who diagnosed Shawn's condition, Dr. Bresnan, told her only that "these things 'sometimes happen.' " We think a jury could find that a reasonably prudent person in Diane's position could well have concluded that Shawn's injuries were not attributable to any cause at all and that, accordingly, there was no point in further inquiry. Further, we disagree with the defendants' argument that Dr. Bresnan's report, which indicated that Shawn's cerebral palsy "appears to be related to a pre- and paranatal encephalopathy," alerted Diane to the likely cause of Shawn's disabilities. This report was addressed to a third party, and there is no evidence that Diane ever read the report. Cf. *Bowen* v. *Eli Lilly & Co.*, *supra* at 209 (plaintiff had read doctor's letter indicating that he had found "an important association" between her injuries and the drug DES).

Finally, we note the defendants' concern that the plaintiff's notice in this case was entirely fortuitous and that if she had not viewed the television advertisement suggesting a causal link between cerebral palsy and obstetrical care she might not have discovered her claim for several more years. Relying on *Malapanis* v. *Shirazi*, 21 Mass. App. Ct. 378, 387-388 n.9 (1986), the defendants have argued that, if discovery of a plaintiff's claim is deemed dependent on such a fortuitous event, "there would never be a prescribed or predictable limitations period." The defendants' reliance on *Malapanis* is misplaced. In that case, the plaintiff had notice of the cause of his injuries for several years but did not commence his action against the defendant, his physician, until he read in the newspaper that another person had done so. The Appeals Court refused to accept the plaintiff's argument that he discovered his claim when he read the newspaper article in question, concluding that such an approach would leave too many claims open-ended. *Id.* In the present case there is nothing in the summary judgment record which could lead us to conclude that, as matter of law, Diane McGuinness knew,

or should have known, of the cause of Shawn's injuries before she saw the advertisement in question. Unlike the facts in *Malapanis*, the advertisement in this case was Diane's first notice of the cause of Shawn's injuries. While it is true that this notice was somewhat fortuitous, our inquiry is limited to whether Diane reasonably should have discovered her claim earlier. Contrast *Lear-Heflich* v. *Schwartz*, 21 Mass. App. Ct. 928, 929 (1985) (plaintiff's deposition revealed that she thought there was a relation between insertion of new intrauterine device by the defendant, her pelvic inflammation and her hysterectomy and that she had discussed the matter with her father, a urologist, who had indicated a connection between IUD insertion, infection, and surgery).

Thus, for the reasons set forth in this opinion, the judgment for the defendants is reversed, and the case is remanded for further proceedings.

*So ordered.*