Billings, A.J.
The plaintiffs, Joseph Wilkinson and Darlene Wilkinson, commenced this action with a two-count complaint against Citation Insurance Company and Commerce Insurance Company (see footnote 2). Count I asserts their entitlement to recover, under a homeowners policy, the full value of property that was destroyed in a house fire; Count II lodges a claim under Chapters 93A and 176D of the General Laws.
The plaintiffs now move for summary judgment on Count I. The defendants have cross-moved for summary judgment on both counts. For the reasons that follow, the plaintiffs’ motion is ALLOWED. The defendants’ motion is ALLOWED IN PART (as to Count II) and DENIED IN PART (as to Count I).

FACTS

The following facts are not, on the summary judgment record, subject to genuine dispute. The defendants issued a homeowners’ policy (the “Policy”) to the plaintiffs effective from July 16, 2000, to July 16, 2001, pertaining to their residence at 1551 Boardman *41 Street, Sheffield, Massachusetts. The Policy covered, among other things, personal properly owned by the plaintiffs.
On December 22, 2000, there was a fire at the plaintiffs’ home (which constituted, under the Policy, the “residence premises”), which destroyed personal property owned by the plaintiffs. The majority of the property lost in the fire was specialized tools and equipment owned by the plaintiffs but used by their son, Todd Wilkinson (“Todd”), in his auto racing. The plaintiffs claimed a value of $44,242.95.-
On October 12, 2001, the plaintiffs by their attorney made a written demand upon the defendants requesting that the defendants pay in full the loss sustained by the plaintiffs. The defendants engaged in an investigation to determine if the type of racing that Todd participates in is a hobby or livelihood. The defendants’ investigator went to the Lebanon Valley Speedway, where Todd races often and spoke to other participants. By a letter dated, the defendants issued a timely response to the plaintiffs’ demand and, in great detail, set forth the basis for its coverage position.
The plaintiffs gave timely notice of the loss to the defendants. On June 26, 2001, after conducting an Examination Under Oath of Todd and other investigation (including the dispatch of an investigator to interview denizens of the Lebanon Valley Speedway, where Todd frequently competed) the defendants responded that coverage for the tools and equipment was limited, under the Policy, to $3,000. A demand under Chapters 93A and 176D followed on October 12, 1991, and met with a timely denial, setting out in detail the reasons for the insurers’ position, on November 9, 2001.
The Policy contained the following provisions.
SECTION IPROPERTY COVERAGES
COVERAGE CPersonal Property:
The Special Limits of Liability categories are increased to:
8. $3000 on property, on the “residence premises,” used at any time or in any manner for any “business” purpose.
The Policy also included the following definition:
“Business” includes trade, profession or occupation.
Todd is employed full-time as a heavy equipment operator and repairman in the Wilkinson family business, Joe Wilkinson Excavating, Inc. In his spare time he races autos, mostly on weekends, and mostly at the Lebanon Valley Speedway in West Lebanon, New York.
The plaintiffs provided Todd with space in their garage (part of the “residence premises”), which he used as a shop to work on his cars. The tools and equipment lost in the fire were in the garage, were purchased by the plaintiffs, and were used by Todd to construct, modify and repair his racing vehicles.
Todd’s auto racing is a serious pursuit in which he has engaged since he was a teenager. In 1999, he received three days of specialized NASCAR training at the Buck Baker Racing School located at the Rocking-ham Motor Speedway in North Carolina. He has also attended courses for automobile racing at the Kenney Tremont Driving School and the Brett Hearn Driving School. Todd’s experience includes street stock cars, modified dirt racing and NASCAR. He races at tracks throughout the northeastern United States.
Todd conducts his racing endeavors under the name Wilkinson Racing. Wilkinson Racing is not a corporation or a partnership; it has no place of business, and no employees. (Wilkinson family members and friends often attend races, and have worked as volunteers to act as his crew and mechanics.) Todd did, on his accountant’s advice (see below), open a bank account titled Todd Wilkinson d/b/a Wilkinson Racing using his own social security number; Wilkinson Racing has no separate tax ID number.
Over the years local businesses have sponsored Wilkinson Racing by making engines and other components available for Todd’s use; ownership of these remained with the sponsors. Several sponsors also provided cash payments in exchange for advertising on Todd’s vehicle. At any given time, Wilkinson Racing has between twenty and forty sponsors.[3] There was no formal contract or agreement with any of them.
The plaintiffs, on their income tax returns, have never deducted or depreciated the cost of the tools and equipment which they provided for Todd’s use; nor, so far as appears, has Todd. Todd’s income tax returns (filed jointly with his wife) do list his occupation as “construction/racing,” and address the financial aspects of Wilkinson Racing on Schedule C, “Profit or Loss from Business.” In each year reflected in the record, Todd’s returns showed gross income (“gross receipts or sales”), and expenses (typically, fuel and oil, entry fees, tires, parts, and repairs). The numbers, although a good deal less than the couple’s W-2 income, are nonetheless substantial$19,745 in gross income from racing in 1998; $21,450 in 1999; $26,370 in 2000. In each year, however, racing-related expenses substantially exceeded receipts, so that by the end of 2000, Todd had accumulated a carry-forward loss for 2001 of $12,311. Todd did not, in other words, profit from racing, nor did he deduct his racing-related losses, beyond applying them to offset racing-related receipts.
I take judicial notice that this treatment was consistent with the “hobby loss” rule under Section 183 of the Internal Revenue Code, which provides that losses from an individual’s activfiy which is “not engaged in for profit” may be deducted only to the extent of gross income realized from the activity. 26 U.S.C. 183(b). This is as distinct from “ordinary and neces *42 saiy expenses paid or incurred during the taxable year in carrying on any trade or business,” to which this limitation does not apply. 26 U.S.C. 162(a). “It is well established that the existence of a genuine profit motive is the most important criterion for the finding that a given course of activity constitutes a trade or business” under Section 162(a). Lamont v. Commissioner, 339 F.2d 377, 380 (2d Cir. 1964).[4] Todd’s tax treatment of Wilkinson Racing was, in other words, consistent with the lack of a profit motive, whichin Internal Revenue Code parlance, at leastmeant that Wilkinson Racing was not a “trade or business.”

DISCUSSION

A. Summary Judgment Standard
The court grants summary judgment when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Ng. Brothers Construction Inc. v. Cranney, 436 Mass. 638, 643-44 (2002); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991). The moving party bears the burden of affirmatively demonstrating that there is no triable issue of material fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). In making the determination as to whether a genuine issue of material fact exists, the court must consider the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits. McGuinness v. Cotter, 412 Mass. 617, 620 (1992), citing Mass.R.Civ.P. 56(c). The court must consider the evidence with an indulgence in the opposing party’s favor. Id. However, to avoid summary judgment, the parly opposing the motion is required to advance sufficient and explicit facts detailing the existence of a material issue warranting a trial on the merits. Commonwealth v. Colonial Motors Sales, Inc., 11 Mass.App.Ct. 800, 804-07 (1981). Mere allegations of the existence of material issues of fact are insufficient. See Godbout v. Cousens, 396 Mass. 254, 261 (1985).
B. Count I (Coverage)
Under established principles, policy terms “must be given [their] ordinary and usual meaning, and construed in the manner that the insured would reasonably understand to be the scope of his coverage.” Newell-Blais Post #443, Veterans of Foreign Wars of the United States, Inc. v. Shelby Mut. Ins. Co., 396 Mass. 633, 635 (1986). An ambiguity, if genuinethat is, if a term “is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one”is resolved “in the way most favorable to the insured.” Citation Ins. Co. v. Gomez, 426 Mass. 379, 381 (1998). Metropolitan Prop, and Cas. Ins. Co. v. Fitchburn Mut. Ins. Co., 58 Mass.App.Ct. 818, 823 (2003), quoting Worcester Mut Ins. Co. v. Marnell, 398 Mass. 240, 245 (1986), and King v. Prudential Ins. Co., 359 Mass. 46, 50 (1971).
Further, it is a “long-standing rule of construction that the favored interpretation of an insurance policy is one which ‘best effectuates the main manifested design of the parties.’ Clearly, the manifest design of homeowners’ insurance is to protect homeowners from risks associated with the home and activities related to the home.”
“Business” is commonly defined as
“a usually commercial or mercantile activity customarily engaged in as a means of livelihood.” “Business,” as commonly understood, is thus an activity engaged in for the purpose of gain or profit.
Newell-Blais, 396 Mass, at 636, quoting Webster’s New Int’l Dictionary 302 (3d ed. 1961). See also Worcester Ins. Co. v. Fells Acres Day School Inc., 408 Mass. 393, 412 (1990) (holding that where minors were injured at a day care center in a home, the business exclusion applied because the day care center was a business pursuit engaged in for profit).
In the Policy, “business” is defined to include a trade, profession or occupation. Trade is “[t]he business one practices or the work in which one engages regularly”; a “profession” is “[t]he occupation ... to which one devotes oneself’; and an occupation is “[t]hat which occupies, or engages, the time and attention; the principal business of one’s life.” Merriam-Webster’s Collegiate Dictionaiy (10th. Ed. 2001).
Todd’s auto racing pursuits did not constitute a “business” under the customary definition of the term, which is focused on financial gain, or at least the reasonable expectation thereof. Todd’s tax returns, and all other information available to the defendants and made a part of the summary judgment record, indicate that he derived his livelihood as an operator of construction equipment. Auto racing was a sideline. It was never profitable, and there was no reason to think it would be in the future; to the contrary, as receipts grew, expenses grew even faster. By treating his racing losses as hobby losses, Todd signaled his lack of profit motive behind the endeavor (at the price of a higher tax bill).
If the Policy’s definition of “business”to “include [ ] trade, profession or occupation”expands the term beyond its customarily mercantile connotations, it does so in a manner not material to this case. Although a time- and resource-consuming pastime, auto racing was not, the record is clear, “the principal business of [Todd’s] life.” Monday through Friday, he is a heavy equipment operator. Racing is a sideline. Reasonable policyholders would not understand the term “business,” either in customary usage or under the Policy’s definition, to apply to the weekend avocation of an otherwise gainfully employed individual.
Todd’s racing hobby therefore was not a “business,” and the tools and equipment in the plaintiffs’ garage was not property used for a business purpose. The $3,000 limit on coverage therefore did not apply, and the plaintiffs therefore are entitled to summary judgment on Count I.[5]
*43 C. Count II (G.L.c. 93A and G.L.c. 176D)
The insurers’ investigation of the claim was reasonably prompt, and thorough. Their denial of the claim, and their refusal to tender relief in response to the insureds’ demand under G.L.c. 93A, 9, were accompanied by detailed explanations of the insurers’ position. That their position was at variance with the Court’s holding herein is not, by itself, ground for deploying the heavy artillery of Chapters 93A and 176D. “An insurance company which in good faith denies a claim of coverage on the basis of a plausible interpretation of its insurance policy cannot ordinarily be said to have committed a violation of G.L.c. 93A.” Lumbermens Mut Cas. Co. v. Offices Unlimited, Inc., 419 Mass. 462, 468 (1995). Summary judgment will therefore enter for the defendants on Count II.

ORDER FOR JUDGMENT

For the foregoing reasons:
1. Summary judgment will enter for the plaintiffs as to liability on Count I. If the parties are able to agree on damages (i.e., on the amount of the plaintiffs’ loss without regard to the $3000 limitation on property “used at any time or in any manner for any ‘business’ purpose,” they shall file a stipulation (reserving all appellate rights) within 30 days; otherwise, the plaintiffs shall so notify the Court and request an assessment of damages, to be held before the judge then in the session.
2. Summary judgment shall enter for the defendants on Count II, dismissing that Count.

Examples of some of these sponsors are: Mark West Company, Sewards Tire, Custom Buildings, and Steve’s Auto Repair.

Section 183 further provides a presumption that if the. activity has been profitable for three of the last five years, it is an activiiy engaged in for profit.

This holding makes in unnecessary to consider the plaintiffs’ other argument, that the limitation should be read to apply only to property used in a business of the policyholder (s), not that of their son.