Curran, Dennis J., J.
Peter Kinchla (“Peter”) has sued his brother, Michael Kinchla (“Michael”), and Michael’s wife, Peter’s sister-in-law, Hildred Pennoyer (“Hildred”) because of Michael’s management of a business, Disola Development, LLC, that the brothers’ father started in 1996. Michael has managed Disola Development since 1996 and has turned it into a highly successful company. Peter, a minority stakeholder in Disola Development, alleges that Michael has breached his fiduciary duties to him through fraudulent acts Michael undertook while managing the company.
Michael and thé other defendants have moved for summary judgment, arguing that all of the allegedly fraudulent acts took place more than six years before the filing of this lawsuit, requiring this Court to dismiss Peter’s claims under the statute of limitations. Alternatively, the defendants contend that the complaint must be dismissed because Peter’s allegations of fraud are insufficiently pleaded. Peter counters that, as a fiduciary, the statute of limitations did not begin to run against him until he acquired actual knowledge of his underlying causes of action, and that his allegations of fraud meet the required pleading standard. For the following reasons, the defendants’ motion for summary judgment must be DENIED.[2]
BACKGROUND
The undisputed facts, as revealed by the summary judgment record, are as follows.[3]
Disola Development is a limited liability company, based in Newton, Massachusetts, that invests in real estate in the Dorchester neighborhood of Boston. A Certificate of Organization was filed with the Commonwealth on January 22, 1996. Three initial investors formed Disola Development by contributing capital to purchase a number of apartments in Dorchester: Paul Kinchla (“Paul”), who is Peter and Michael’s father, Joseph Mancuso, and Rosario Urdi. On January 26, 2006, the three founding members signed the Operating Agreement, which controlled the company’s formation and operation. The percentages each held in Disola Development, as reflected by Schedule A of the Operating Agreement, were: Urdi-40%; Paul-33.33%; and Mancuso-26.67%, based upon each founder’s initial investment in the company, out of the total initial capital investment of $750,000.
On January 22, 2006, Paul, through a signed document, purportedly transferred a 1% interest in Disola Development to both Peter and Michael. Neither Peter, nor Michael were members of Disola Development at that time. The terms of the Operating Agreement required each member of Disola Development to provide prior, written consent before assigning a membership interest. Because only Paul, not the other members, signed the assignment document and because it was signed before the Operating Agreement established Disola Development, it is a disputed fact as to whether any interest in Disola was actually transferred on that day.
On January 23, 2006, Michael gave Paul $75,000, purportedly for a 10% share of the company. Paul and Michael both signed a document indicating that Paul had received the money from Michael, and that Michael was entitled to a 10.5% interest in Disola Development. The other founding members of Disola Development did not sign this document. This alleged transfer also did not comply with the terms of the Operating Agreement.
When the company began operating the Dorchester apartments, Michael worked as the manager. No sooner had the company begun operations, than disputes began to arise between the founding members. Urdi and Mancuso both sought to leave the company and an agreement was eventually reached whereby their respective interests in the company would be bought out. On August 20, 1997, Peter, Michael and Hildred were admitted, by a document signed by the three founders, as new members of Disola Development. The following day, August 21, 1997, Disola Development redeemed the interests held by Urdi and Mancuso. The redemptions were finalized on August 26, 1997, and Urdi and Mancuso ceased to hold membership in the company. On that same date, Paul completed an “Assignment of Interest in Limited Liability Company” in which he assigned a percentage of his ownership in Disola Development to Peter, Michael and Hildred. Peter received a .755% interest, while Michael and Hildred each received a 9.158% interest.
During this same time period, the mortgage on the Dorchester apartments needed to be refinanced. Michael asked Peter if he would serve as guaranty for a new mortgage using Peter’s assets as collateral. Peter agreed to provide the guaranty despite several reservations. In exchange jfor providing two $1.5 million guaranties, Peter was given a 5% ownership interest in Disola Development. Peter signed the guarantees on August 21, 1997.
A 1997 K-l IRS tax form that Peter received reflects that he owned a 5% interest in the company at the end of 1997. The K-l forms for the other owners, which there is no indication Peter received, reflect Paul’s percentage ownership dropping from 35.11% to 10%, Michael’s interest increasing from nothing to 58.92%, and Hildred’s ownership increasing from nothing to 26.08%.
On February 22, 2002, Disola Development (acting through Michael), sent a letter to Peter indicating the former’s intention to buy a 10% interest in Disola Development from Paul. Specifically, it states: “Dad wants to finalize the sale of his ten percent interest in Disola.” A canceled check from Disola Development to Paul indicates that the company paid the $300,000 *376 redemption fee. The reason for the other checks to Paul is unclear from the record.
Generally, the relationship between the brothers has been strained for the past fifteen years. Michael has managed the company throughout its existence, while Peter, who lives out-of-state, has been an inactive member. The ongoing business and familial disputes deteriorated into the filing of this fourteen-count lawsuit on April 15, 2009. The parties have continually disagreed over discovery matters, requiring this Court to appoint a discovery master.[4]
Paul died on January 31,2011 before his deposition could be taken, leaving this Court with an incomplete picture of the role he played in Disola Development and the transfers of his interests in the company.
DISCUSSION
Summary judgment is granted where there are no genuine issues of material fact and the moving parly is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c), Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson u. Time, Inc., 404 Mass. 14, 17 (1989). For issues that the moving party does not have the burden of proof at trial, the absence of a triable issue may be shown by the submission of affirmative evidence that negates an essential element of the opposition’s case, or materials showing “that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case.” Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts that would establish the existence of a genuine issue of material fact. Id. Parties may not rely on bare assertions and conclusions to create a dispute necessary to defeat summary judgment. Benson v. Massachusetts Gen. Hosp., 49 Mass.App.Ct. 530, 532 (2000), quoting Polaroid Corp. v. Rollins Envtl. Servs., Inc., 416 Mass. 684, 696 (1993). The court views the evidence in the light most favorable to the non-moving party, but does not weigh the evidence, assess credibility, or find facts. Attorney Gen. v. Bailey, 386 Mass. 367, 370-71 (1982).
When summary judgment is sought based upon a statute of limitations, “once the defendant establishes that the time period between the plaintiffs injury and the plaintiffs complaint exceeds the limitations period set forth in the applicable statute, the plaintiff bears the burden of alleging facts which would take his or her claim outside the statute.” McGuinness v. Cotter, 412 Mass. 617, 620 (1992), citing Riley v. Presnell, 409 Mass. 239, 243-44 (1991). If the plaintiff responds by alleging facts that would bring their claims outside the impact of the statute of limitations, then the defendant is not entitled to summary judgment. McGuinness, 412 Mass, at 625.
A. Statute of Limitations
Generally, tort claims are governed by a three-year statute of limitations, and contract actions are controlled by a six-year statute of limitations. G.L.c. 260, §2A (tort claims); G.L.c. 260, §2 (contract claims). The fourteen-count complaint in this case contains both tort and contract claims premised upon the same factual background, specifically, the 1997. and 2002 transfers of interest in Disola Development from Paul to Michael and Hildred. Peter did not file the present action until 2009. Because the most recent transfer occurred in 2002, all claims arising under both tort and contract law would have to be dismissed under the applicable statute of limitations. However, the statute of limitations may be tolled, under G.L.c. 260, §12, “if the wrongdoer . . . breached a fiduciary duty of full disclosure.” Puritan Med. Ctr., Inc. v. Cashman, 413 Mass. 167, 175 (1992).
Members of a close corporation owe each other a fiduciary duty.[5] Donahue v. Rodd Electrotype Co. of New England, Inc., 367 Mass. 578, 592-93 (1975). Disola Development is a close corporation because it has “(1) a small number of stockholders; (2) no ready market for the corporate stock; and (3) substantial majority stockholder participation in the management, direction and operations of the corporation.” Brodie v. Jordan, 447 Mass. 866, 868-69 (2006), quoting Donahue, 367 Mass, at 586. Each member of Disola Development, therefore, owes each other a fiduciary duty of the utmost good faith and loyalty.
Because a fiduciary relationship exists between the parties, “mere failure to reveal information may be sufficient to constitute fraudulent conduct” and toll the statute of limitations. Puritan Med. Ctr., Inc., 413 Mass, at 176, and cases cited therein. “(T]he failure adequately to disclose the facts that would give rise to knowledge of a cause of action constitutes fraudulent conduct and is equivalent to fraudulent concealment for purposes of applying §12.” Demoulas v. Demoulas Super Markets, Inc., 424 Mass. 501, 519 (1997), and cases cited therein. To avoid summary judgment, Peter “need only show that the facts on which [his claims are] based were not disclosed to him by [Michael] . ” Id. (plaintiff need not conduct an “independent investigation,” only show that they did not have actual knowledge of facts giving rise to action). Any material factual dispute concerning when Peter knew of his cause of action must be resolved by the fact finder. Riley v. Presnell, 409 Mass. 239, 247 (1991).
To be entitled to summary judgment, the defendants must definitively show that Peter knew sufficient information in 1997 and 2002 to establish that he had a cause of action against the defendants. See Doe v. Harbor Sch, Inc., 446 Mass. 245, 255 (2006) (actual knowledge standard tolled statute of limitations to protect “beneficiary’s legitimate expectation *377 that the fiduciary will act with the utmost probity in all matters concerning the relationship”). The defendants have not done so.
It is clear from the record that Peter knew of both the 1997 and 2002 transfer of interests in Disola Development. What is unclear is whether he knew the percentage each member owned as a result of the transactions. The 1997 redemption of Mancuso and Urdi’s shares could be viewed to result in Paul owning 100% of the company. Whether his gifts of a .755% interest to Peter and 9.158% interests to Michael and Hildred came from a 100%, 33.33%, or a 35.11% ownership interest is a material fact that is not established on this record.
Likewise, the question of why Peter’s interest in the company did not rise in 2002 after Disola Development redeemed Paul’s 10% interest is another key question. The funds for that transaction appear to have come from the company, not Michael and Hildred personally, meaning that all members’ interests should have risen proportionately, not just Michael and Hildred’s interests.
It cannot be determined on the record before the Court whether Peter had been apprised of all the transactions that occurred to reach the present state where Michael and his wife own 95% of the company. Instead, the Court is faced with many disputed facts that must be determined by the factfinder.[6] Ultimately, factual questions exist as to whether Peter’s claims are time-barred, and, accordingly, summary judgment cannot be granted at this time.
B. Heightened Pleading Standard for Fraud
Claims of fraud must be stated with particularity in the complaint. Mass.R.Civ.P. 9{b). The defendants argue that Peter’s lengthy complaint fails to lay out the essential requirements of a fraud claim. While the complaint may contain more verbiage than substance, this Court finds sufficient allegations of fraud to meet the requirements of the Rule.
In the most general sense, the complaint alleges that the manner in which Michael and Hildred acquired 95% of Disola Development is fraught with difficulty because the individual defendants did not fully apprise Peter of the manner and nature of the transactions in which they acquired 95% ownership of the company. The complaint alleges that Michael did not reveal to Peter the full details of the 1997 and 2002 transactions despite having a fiduciaiy duty to do so. Particularly, Michael’s acquisition of a 10.5% interest in the company on January 23, 1996, before the company executed its Operating Agreement and its members were determined, is actionable because this interest was not revealed to Peter before the filing of this suit. This alleged concealment is sufficient to put Michael on notice of the nature of the claims. See Equipment & Sys. for Indus., Inc. v. Northmeadows Const. Co., 59 Mass.App.Ct. 931, 932 (2003).
ORDER
For these reasons, the defendants’ motion for summary judgment is DENIED; the defendants’ request for leave to file a motion under G.L.c. 231, §6F is DENIED, and finally the parties’ motions to strike are DENIED.

fhe Court has reviewed both the defendants’ reply and the plaintiffs sur-reply. The motion before this court relates to the application of the statute of limitations and whether the plaintiffs complaint meets the heightened pleading standards for fraud. The Court finds both parties’ responses only tangentially related to the present summary judgment, and therefore denies both motions to strike and gives little weight to the additional submissions.

Nhe parties’ concise statement of material facts is 56 pages in length. Superior Court Rule 9A(b)(5)(ii) requires that the party contesting a fact “shall set forth a response to each [fact] directly below the appropriate numbered paragraph.” Plaintiffs language “see exhibits cited in Statement of Additional Facts below,” which then directs the Court to review 92 additional facts and accompanying exhibits, fails to meet the standards required of the Rule. See Sullivan v. Liberty Mutual Ins. Co., 444 Mass. 34, 46 n.18 (2005), quoting Dziamba v. Warner & Stackpole, LLP, 56 Mass.App.Ct. 397, 399 (2002) (Rule 9A(b)(5) “is an ‘anti-ferreting’ rule designed to assist a trial judge in the all too typical situation in which the parties throw a foot-high mass of undifferentiated material at the judge, who must then determine whether the record contains any material facts in dispute”). The Court also disregards all argumentative and hyperbolic characterizations of the facts appearing in the Rule 9A(b)(5) statement. Despite this litigational waste, the Court has reviewed the entire record to determine whether any genuine issue of material fact exists.

It had been this Court’s hope that the parties could have resolved on their own terms, what is, essentially, an intra-family dispute. However, after the entry of litigation counsel, the division between the parties has only deepened, and the bitterness (as amply demonstrated by the pleadings) has been exacerbated. To cut through this morass, this Memorandum is accompanied by an Order regarding Mediation, which requires the parties to consider the prospect of alternative dispute resolution.

“Because of the fundamental resemblance of the close corporation to the partnership . . . stockholders in the close corporation owe one another substantially the same fiduciary duty in the operation of the enterprise that partners owe to one another . . . [T]he ‘utmost good faith and loyalty.’ ” Donahue v. Rodd Electrotype Co. of New England, Inc., 367 Mass. 578, 592-93 (1975), quoting Cardullo v. Landau, 329 Mass. 5, 8 (1952). Stockholders in a close corporation “may not act out of avarice, expediency or self-interest in derogation of their duty of loyalty to the other stockholders and to the corporation.” Id. at 593. “Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior.” Donahue, 367 Mass, at 594, quoting Meihhard v. Salmon, 249 N.Y. 458, 464 (1928). These are not mere words; rather, they are, and have been for generations, the lawful— and moral—expectations of appropriate behavior in this area.

While Paul’s September 9, 2010 letter to Peter certainly assists the defendants’ case, it does not entitle them to summary judgment.