The plaintiffs appeal from a Superior Court judgment dismissing, as time barred, their complaint against the defendant for medical malpractice and loss of consortium. The plaintiffs argue that the motion judge improperly resolved a question of fact in determining that their claims accrued more than three years before they filed their complaint. We affirm.
Background. We summarize the pertinent facts as alleged in the complaint, as well as in affidavits submitted by plaintiff Julia Melanson and her consulting physician, Arthur M. Carlin, in opposition to the defendant's motion to dismiss. Upon submitting those affidavits, the plaintiffs asked, and the judge agreed, to treat the defendant's motion as one for summary judgment.
In 2012, the plaintiff,[3] who had "previous abdominal medical history,"[4] was diagnosed with a form of diverticulitis and admitted to a hospital in Newburyport, where, on October 11, 2012, the defendant, a licensed physician, performed a laparoscopic sigmoid colectomy with low anterior anastomosis. Her postoperative stay was complicated by delirium, abdominal fluid drainage, and slow return of gastrointestinal function. She was discharged on October 22, 2012.
After experiencing chills, abdominal cramping, and emesis, she was readmitted on October 30, 2012. The defendant advised her that he thought there was a small bowel obstruction due to adhesions. After several days, he returned her to the operating room for an exploratory laparotomy. During her postoperative stay, she developed a pulmonary embolus; due to her lack of improvement, she requested transfer to a tertiary care center.
On November 8, 2012, she was transferred to Beth Israel Deaconess Medical Center (Beth Israel) in Boston for care by a different surgeon. Tests revealed leakage of urine from her left ureter into her left pelvis, caused by the defendant having severed the ureter during the October 11, 2012, surgery. A left nephrostomy tube was placed to drain the urine from the left kidney.
On December 14, 2012, and again on January 25, 2013, she was readmitted to Beth Israel with infections in the area of the nephrostomy tube. The infections were painful. On March 22, 2013, she was again readmitted and had surgery, performed by Beth Israel surgeons, to reimplant the severed ureter into the bladder. It was again determined that the ureter had been severed by the defendant during the initial surgery. Notably, there is no evidence that she was informed at this time that the reimplantation had "fixed" her problems or that she would experience no further symptoms.[5]
Even after the March, 2013, surgery she "continued to experience abdominal issues," and inquired of her primary care physician and her Beth Israel surgeons regarding the cause, but they "evaded answering" and "never provided a satisfactory answer to [her] questions." In September or October, 2014, her attorney similarly inquired in writing of her treating physicians but received no response.[6]
In August, 2015, she asked her attorney to obtain an independent medical evaluation. On September 9, 2015, she received such an evaluation, which concluded that the injury received when the defendant severed her ureter "was a substantial cause of [her] medical and surgical problems." The evaluating physician opined, however, "that the severing of the ureter and the failure to discover and remedy the situation did not constitute malpractice." "Given [her] complicated medical history[,] this was the very first time that [she] realized that the severing of [her] ureter was a substantial cause of [her] problems." But "[a]t that point and under the circumstances [she] understood that initiating legal action against [the defendant] would be irresponsible and acting in bad faith and accordingly sought another independent evaluation of [her] situation since [she] continued[ ]to have further abdominal issues."
This evaluation did not occur until September, 2016, when Dr. Carlin concluded that the defendant's severing of the left ureter, and subsequent failure to recognize and remedy the injury, deviated from the standard of care.[7] She filed suit in Superior Court on September 13, 2016. On the defendant's motion, the complaint was dismissed as time barred, and this appeal followed.
Discussion. 1. Governing law. A medical malpractice action must be filed within three years after the cause of action accrues. G. L. c. 260, § 4. Under the "discovery rule" adopted for medical malpractice claims in Franklin v. Albert, 381 Mass. 611 (1980) (Franklin ), such a claim accrues when the plaintiff "(1) knew or had sufficient notice that she was harmed; and (2) knew or had sufficient notice of the cause of the harm." Lindsay v. Romano, 427 Mass. 771, 774 (1998) (Lindsay ), quoting from McGuinness v. Cotter, 412 Mass. 617, 627 (1992) (McGuinness ).
"It is not necessary that the plaintiff have notice that the defendant was actually responsible for the injury, only that she have knowledge or sufficient notice that the medical care given by the defendant may have caused the injury." Lindsay, 427 Mass. at 774. "In determining whether a party has sufficient notice of causation, our inquiry is whether, based on the information available to the plaintiff, a reasonably prudent person in the plaintiff's position should have discovered the cause of his or her injuries." Ibid., quoting from McGuinness, 412 Mass. at 628.
Of particular importance here, under the discovery rule, "[t]he plaintiff need not know the full extent of the injury before the statute starts to run." Bowen v. Eli Lilly & Co., 408 Mass. 204, 207 (1990) (Bowen ), citing Olsen v. Bell Tel.Labs., Inc., 388 Mass. 171, 175 (1983) (Olsen ). "If knowledge of the extent of injury were to control the accrual of a cause of action, the fixed time period of statutes of limitations effectively would be destroyed. The full extent of an injury often is not discoverable for many years after it has been incurred." Olsen, 388 Mass. at 175. Accordingly, "the statute of limitations starts to run when an event or events have occurred that were reasonably likely to put the plaintiff on notice that someone may have caused her injury." Bowen, 408 Mass. at 207.
Also, "[w]e do not require that a plaintiff have notice of a breach of a duty before a cause of action may accrue." Id. at 208. See Parr v. Rosenthal, 475 Mass. 368, 378 (2016). Once a plaintiff has "(1) knowledge or sufficient notice that she was harmed and (2) knowledge or sufficient notice of what the cause of harm was," her claim accrues. Bowen, 408 Mass. at 208. "Thus on notice, the potential litigant has the duty to discover from the legal, scientific, and medical communities whether the theory of causation is supportable and whether it supports a legal claim." Ibid., quoting from Fidler v. Eastman Kodak Co., 714 F.2d 192, 199 (1st Cir. 1983). "Reasonable notice that a particular product or a particular act of another person may have been a cause of harm to a plaintiff creates a duty of inquiry and starts the running of the statute of limitations." Bowen, 408 Mass. at 210. "[L]imitation statutes encourage plaintiffs to bring actions within prescribed deadlines when evidence is fresh and available." Franklin, 381 Mass. at 618. The Legislature, in G. L. c. 260, § 4, gave potential medical malpractice claimants three years from the date their claims accrued to determine whether they have viable causes of action. Within that period, such claimants must exercise diligence.
"When a plaintiff knew or should have known of [her] cause of action is a question of fact to be determined by the jury." Lindsay, 427 Mass. at 774. But, where there is no genuine dispute of material fact, the issue may be decided on summary judgment. See Malapanis v. Shirazi, 21 Mass. App. Ct. 378, 383 (1986). See also Bowen, 408 Mass. at 210.
2. Application of law to this case. Here, we agree with the motion judge that the plaintiff's cause of action accrued no later than March 22, 2013, and accordingly that the complaint, filed more than three years later, was time barred.
By the plaintiff's own admission, as of March 22, 2013, she knew that the defendant's having severed her ureter had caused her to have leakage of urine into her pelvis; two surgeries (the first to insert the nephrostomy tube and the second to reimplant the ureter); two painful infections at the nephrostomy tube site; and three hospitalizations (December 14, 2012, January 25, 2013, and March 22, 2013)-or four, if one considers the November 8, 2012, postoperative hospitalization during which the severed ureter was identified. She knew by March 22, 2013, that she had suffered these injuries (including the need for intrusive and burdensome treatments) and that the defendant had caused them.[8] Her claim accrued by that date.
On this record, it makes no difference that (drawing all reasonable inferences in her favor) the plaintiff did not learn until sometime after March 22, 2013, of all of the harms caused by the defendant. "The plaintiff need not know the full extent of the injury before the statute starts to run." Bowen, 408 Mass. at 207. Nor does the plaintiff here allege that she was assured, by the defendant or anyone else, that her problems had been fully resolved by the March 22, 2013, surgery; that she would experience no additional harms as a result of the severed ureter; or that any harms she did experience after March 22, 2013, were not due to the severed ureter. Here, moreover, the plaintiff acknowledges that she was affirmatively advised in September, 2015, that the severed ureter was the cause of her continued abdominal problems. As she put it at oral argument, she was told at that time, "well within the three-year period," that "[her] injuries are causally related to what [the defendant] did or didn't do."
Nor does it help the plaintiff that, as of March 22, 2013, she did not yet know whether she had a viable legal claim against the defendant. See id. at 208. What matters is her knowledge that the defendant had caused her harm. That she did not become subjectively aware until September, 2015, that the defendant's acts were a "substantial cause" of her original and continuing harms, and did not obtain another evaluation until September, 2016, when Dr. Carlin advised her that the defendant had breached a duty of care, does not relieve her from the operation of the statute of limitations. That statute gave her three years from the date of accrual to exercise reasonable diligence, i.e., to carry out her "duty to discover," ibid., or "duty of inquiry," ids="3890281" index="20" url="https://cite.case.law/mass/408/204/#p207">id. at 210, to determine whether she had a viable cause of action and, if so, to file suit. After three years, as the Legislature has determined, the balance tips in favor of protecting defendants from stale claims.[9]
Conclusion. The judge correctly ordered summary judgment dismissing the complaint as time barred.
Judgment affirmed.

For simplicity we will hereafter refer to Julia Melanson as the plaintiff, as the operative facts concern her alone, and at this stage the loss of consortium claim by her husband, Robert M. Melanson, stands or falls with her malpractice claim.

This consisted of colitis, two Caesarean sections, an appendectomy, a unilateral salpingo-oophorectomy, and a prior episode of diverticulitis.

We mention this point only because, at oral argument, there was discussion whether she might have received such assurances. We have carefully reviewed the record and find no evidence or allegation to that effect.

The complaint and affidavits do not specify whether she or her attorney directed any inquiries to the defendant and, if so, whether or how he responded.

Dr. Carlin's affidavit noted that since the original surgery by the defendant, the plaintiff had suffered posttraumatic stress disorder, requiring her to see a therapist. "Also her prolonged illness and hospitalizations have likely contributed to a rapid decline in bone density for which she has suffered two severe bony fractures." Dr. Carlin's affidavit did not provide any details regarding the dates of these events.

This is not a case like Lindsay, where, "[i]n light of the numerous medical opinions the plaintiff received that failed to establish any link between the defendant's conduct and the plaintiff's injury, the plaintiff may reasonably have concluded that the defendant's conduct was not the cause of her injury." Lindsay, 427 Mass. at 775. Here, the plaintiff's complaint alleges that the surgery of November 8, 2012, revealed that the defendant had severed her ureter and that the surgery of March 22, 2013, confirmed this fact. Her affidavit does not allege that her subsequent inquiries to her primary care physician and Beth Israel surgeons resulted in any contrary opinions.
This record also distinguishes the case from Riley v. Presnell, 409 Mass. 239 (1991). In Riley, the effect of the defendant's alleged malpractice on the plaintiff's ability to understand that the defendant had injured him presented a dispute of fact regarding when the claim accrued, precluding summary judgment for the defendant. Riley, 409 Mass. at 245-248. Here, in contrast, although the plaintiff suffered delirium after the defendant performed his surgery on October 11, 2012, she states that she was discharged "in stable condition" on October 22, 2012, and she does not allege any inability to understand what was learned during the surgeries of November 8, 2012, or March 22, 2013.

The plaintiff argues that, until she was advised that the defendant had breached a duty of care, she was effectively barred from filing suit by Mass.R.Civ.P. 11, as amended, 456 Mass. 1401 (2010), and G. L. c. 231, § 6F. This argument is waived, as she did not make it to the motion judge. The statement in her affidavit that filing suit before she had been so advised would have been "irresponsible and acting in bad faith," is no substitute for legal argument in her memorandum opposing the defendant's motion. In any event, the argument fails, for the reasons stated above. She fares no better by framing her argument as one for "equitable tolling" of the limitations period. The argument fits none of the recognized situations in which that doctrine applies. See Shafnacker v. Raymond James & Assocs., 425 Mass. 724, 728 (1997).